MacNICOL *v.* GRANT.

1. Contracts—Reassignment of Liquor License—Chattel Mortgages—Leases.

An agreement to reassign liquor license to plaintiff vendors of a retail liquor business *held*, a separate and distinct agreement from chattel mortgage given plaintiffs and from lease in each of which instruments the agreement was contained and all 3 of which together related to complete transaction of sale of business and lease of premises.

---

References for Points in Headnotes

[1] As to assignability of licenses, see 30 Am Jur, Intoxicating Liquors § 140; 33 Am Jur, Licenses § 6.

[1, 5, 8, 11] Generally as to entire and severable contracts, see 12 Am Jur, Contracts § 315 *et seq.*

[5, 7, 8] As to specific performance of sales and repurchase agreements, see 49 Am Jur, Specific Performance §§ 87, 126.

[6] 49 Am Jur, Specific Performance §§ 8, 9, 46 *et seq.*

[9, 10] 49 Am Jur, Specific Performance § 58 *et seq.*

[12] 12 Am Jur, Contempt § 24; 49 Am Jur, Specific Performance § 179.

2. INTOXICATING LIQUORS — LICENSES — PROPERTY RIGHT — CHATTEL MORTGAGES.

> The holder of a liquor license does not thereby acquire a property right which can legally be made the subject of a chattel mortgage.

3. CONTRACTS—CONSTRUCTION—INTENT.

> A contract must be construed so as to effectuate the intent of the parties when it was made.

4. SAME—CONSTRUCTION—INTENT.

> A contract should be construed in the light of the circumstances existing at the time it was made, in order to ascertain the intent of the parties.

5. SAME—CHATTEL MORTGAGES—MERGER.

> The inclusion of an agreement in a chattel mortgage that the mortgagor would reassign to the mortgagee a retail liquor license does not take from that agreement its separate and independent character nor preclude its specific enforcement after the merger of the interests of the mortgagees and mortgagors.

6. SPECIFIC PERFORMANCE—OVERREACHING—FRAUD.

> One seeking relief by way of specific performance must be free of overreaching or fraud, as such remedy is one of grace.

7. SAME—CONTRACT TO REASSIGN LIQUOR LICENSE.

> Specific performance of an agreement to reassign a retail liquor license may be granted, where there is no fraud, mistake or overreaching in the terms of the agreement.

8. SAME—CONTRACT TO REASSIGN LIQUOR LICENSE—VALUE—OVERREACHING.

> Plaintiffs who had sold retail liquor business to defendants, taken a chattel mortgage back and leased premises to latter and, after defendants had defaulted in payment of Federal taxes, purchased premises at tax distraint sale, *held,* entitled to specific enforcement of defendants' independent, clear and unequivocal agreement to reassign the liquor license, where it appears the personalty would be practically worthless without the license, notwithstanding that with the license there would be some gain, such alternative not making plaintiffs guilty of overreaching or unconscionable conduct.

9. SAME—BAD TRADE—PERFORMANCE.

> There must be something more than the fact that a party had made a bad trade to relieve him from his obligation to specifically perform it.

10. Same—Hardship—Reassignment of Liquor License.
    Hardship arising from defendants' own acts in failing to pay
    Federal taxes after they had made a bargain does not afford
    a basis for denying specific performance of their clear and
    unequivocal agreement to reassign a liquor license.

11. Same—Independent Covenants—Chattel Mortgage.
    Specific performance of agreement to reassign liquor license,
    an independent covenant, *held,* not precluded by reason of any
    interference with defendants' right of redemption in event of
    foreclosure of chattel mortgage because of independent nature
    of covenant.

12. Same—Contempt—Transfer of Liquor License.
    Plaintiffs who were entitled to specific performance of defend-
    ants' agreement to reassign a retail liquor license are restricted
    to remedy for contempt for enforcement, portion of decree
    that it should be deemed to constitute an application for
    transfer of the license not being affirmed.

Appeal from Bay; Leibrand (Karl K.), J.   Sub-
mitted June 5, 1953.   (Docket No. 32, Calendar No.
45,841.)   Decided October 5, 1953.

Bill by William MacNicol and another against
Donald C. Grant and Kenneth Millspaugh, copart-
ners doing business as Club Bon Ton, for specific
performance of agreement to transfer liquor license.
Decree for plaintiffs.   Defendants appeal.   Affirmed.

*Ralph J. Isackson,* for plaintiff.

*Hellerman & Bielawski (Charles A. Hills,* of coun-
sel), for defendants.

Adams, J.   On September 7, 1950, William Mac-
Nicol and Neil MacNicol, plaintiffs and appellees,
sold their retail liquor business in the city of Bay
City, Michigan, to Donald C. Grant and Kenneth
Millspaugh, copartners doing business as Club Bon
Ton, and at the same time leased to them the prem-
ises then occupied by the business.   The sale of the

business included a transfer of all personal property used in the business and an assignment of a class "C" Michigan liquor control commission license.

Twenty-one thousand dollars in cash was paid as a down payment and the balance of the purchase price in the amount of $31,500 was evidenced by a series of notes secured by a chattel mortgage on the personal property. As an added protection to the plaintiffs, defendants agreed to reassign the liquor license to the plaintiffs in the event the chattel mortgage became in default. This agreement appears in the chattel mortgage in the following language:

"Parties of the first part (mortgagors) further agree that in addition to all other legal remedies if this chattel mortgage becomes in default that they will reassign the class 'C' liquor license in conjunction with the goods and chattels herein mortgaged to the parties of the second part (mortgagees) or to a person whom the parties of the second part shall designate with the consent and approval of the Michigan liquor control commission."

Somewhat similar language appears in the lease.

"Lessees of even date herewith have executed a certain chattel mortgage on the goods, fixtures and equipment located on the leased premises at 501–3–5 East Midland street, Bay City, Michigan, and lessees hereby agree that in the event of default on said chattel mortgage that they will reassign the class 'C' liquor license to the lessors or to a person whom the lessors shall designate with the consent and approval of the Michigan liquor control commission. This paragraph shall be void and of no further force or effect when said chattel mortgage has been paid in full by said lessees.

"Lessees further agree that they shall have no right to remove the goods, fixtures and equipment covered by said chattel mortgage or said class 'C' license located on said premises at 501–3–5 East

Midland street, Bay City, Michigan, until said chattel mortgage has been paid in full, except as provided in paragraph (25) hereof."

The defendants operated the business until the early fall of 1952 when the United States government, acting through the internal revenue department, levied upon the defendants' interest in the business to recover some $18,000 of unpaid Federal excise taxes assessed to defendants. The balance then owed to plaintiffs for the purchase of the business amounted to $15,142.50 and has never been paid.

On September 26, 1952, plaintiffs instituted this action in chancery for specific performance of defendants' agreement to reassign the liquor license alleging that defendants had defaulted their chattel mortgage covenants by failing to pay the Federal taxes when due. On October 24, 1952, the defendants' interest in the personal property was sold to the plaintiffs at a tax distraint sale for $3,600, subject to plaintiffs' mortgage. Plaintiffs then amended their bill of complaint to allege the purchase of the property at the tax sale and reaffirmed their prayer for specific performance of the agreement to assign the license.

Defendants in their answer admitted the facts as set forth in plaintiffs' bill of complaint·but insisted that plaintiffs were not entitled to specific performance for the reason that they would be unjustly enriched if they were permitted to regain not only the personal property but the liquor license as well. They further alleged that in buying at the tax sale, plaintiffs were acting to protect both the plaintiffs' and defendants' interest. The answer concluded with a prayer for the appointment of a receiver to dispose of the assets of the partnership, including the license, as a protection to the defendants and their creditors. Later, upon trial, defendants relin-

quished all rights to affirmative relief and asked only that the bill of complaint be dismissed on the ground that plaintiffs were not entitled to equitable relief.

After hearing and the filing of briefs, the trial court came to the conclusion that the agreement to assign the liquor license was a valid contract separate and apart from the mortgage covenants and unaffected by the merger of mortgagors' and mortgagees' interests and that the plaintiffs would not be unjustly enriched by such reassignment. Pursuant to the court's opinion, a decree was entered granting specific performance of the agreement and discharging defendants from all further liability on the purchase-money notes and the chattel mortgage. Defendants appeal.

The first issue to be determined is whether the agreement to reassign the liquor license in the event of defendants' default under the provisions of the chattel mortgage is a separate and distinct agreement between the parties or is, on the other hand, an integral part of the chattel mortgage which became unenforceable upon merger of the mortgagees' and mortgagors' interest through plaintiffs' purchase at the tax distraint sale. The trial court found that such a merger of interests took place but held that defendants' agreement to assign the license continued in existence after the mortgage obligations were satisfied.

We think the trial court was right in so holding, first, because the agreement to reassign appeared in both the chattel mortgage and in the lease, an indication that in the minds of the parties the agreement to assign the liquor license was not an integral part of either instrument but was a distinct and independent agreement related to the complete transaction that took place on September 7, 1950.

Further, in the chattel mortgage the parties agreed "that in addition to all other legal remedies the li-

cense would be reassigned." In the lease the chattel mortgage is mentioned followed by the words "lessees hereby agree that in the event of default on such chattel mortgage they will reassign" the license. In each case it is apparent that the parties were agreeing to matters which were not contemplated as within the usual terms of the instruments themselves, but were in addition to such terms and essentially not a part of nor directly related to either instrument.

It is significant, too, that the license was not listed with the property subject to the chattel mortgage. While the holder of a liquor license does not thereby acquire a property right which can legally be made the subject of a chattel mortgage (*Morse* v. *Liquor Control Commission,* 319 Mich 52), it is not illogical to infer that the parties omitted the license from the chattel mortgage inventory because they did not regard the agreement to reassign as a mortgage covenant.

"It is elementary that a contract must be construed so as to effectuate the intent of the parties when it was made; and, to ascertain the intent of the parties, a contract should be construed in the light of the circumstances existing at the time it was made." *Kunzie* v. *Nibbelink,* 199 Mich 308, 314.

We are of the opinion, therefore, that the inclusion of the agreement to reassign in the chattel mortgage does not take from that agreement its separate and independent character and does not preclude its enforcement after the merger of mortgagees' and mortgagors' interests.

Since the remedy of specific performance is a matter of grace, it is axiomatic that one who seeks such relief must be free of overreaching or fraud. *Johnston Realty & Investment Co.* v. *Grosvenor,* 241 Mich 321. Defendants allege no fraud in plaintiffs' con-

duct but they do insist that they have overreached and would be unjustly enriched if permitted to recover both the personal property through the purchase of defendants' interest at the tax distraint sale and the liquor license through this litigation. Defendants' argument is appealing if consideration is given only to the undisputed fact that plaintiffs paid $3,600 over and above the amount due on their mortgage for the defendants' interest in the personal property. Such payment would indicate that the property was worth measurably more than the balance due on the mortgage and that in taking it over, plaintiffs acquired the equivalent of full payment of defendants' obligation. If plaintiffs did receive full payment or its equivalent, then they have received all that they are entitled to and should expect no more.

There are other facts shown in the record, however, which indicate that plaintiffs did not receive payment in full and that they would not excessively profit from the assignment of the license. One of the plaintiffs, whose testimony was not disputed, said:

"The Federal internal revenue agent had made some gesture or threats about coming in and removing this property from the premises. If the government had moved the bar fixtures, booths and tables, chairs and things out, I don't know if our mortgage would have become practically worthless."

Later in the record he added:

"At the time of the sale of this business to the defendants, I had a bar going on the premises of the Bon Ton. I sold certain personal property and the liquor license. The value to me, if I received back only the personal property without a liquor license, would be less, because the place is so depreciated and run down. The actual value of the equipment on a secondhand market would be nothing, if I got back the equipment without the liquor license."

From these statements it is reasonable to infer that plaintiffs believed it essential to the protection of their chattel mortgage rights that they purchase at the tax distraint sale. In thus purchasing they made certain that the personal property remained on the premises where it could be utilized in connection with the license. Under such circumstances, the purchase price paid by plaintiffs for defendants' interest in the mortgaged property was not necessarily a fair indication of its value on the open market.

It is undoubtedly true that if plaintiffs use the personal property in the exercise of the liquor license, the business resulting therefrom will have a market value in excess of the combined balance due on the mortgage and the amount paid at the tax sale. On the other hand, if the plaintiffs have the personal property only, it is their undisputed statement that its market value will be less than the amount which they have invested in it. Plaintiffs have not failed in their commitments and should not be penalized. The alternative of some gain through acquisition of the license does not make them guilty of overreaching.

We have heretofore held that an agreement to reassign a liquor license is enforceable.

"Defendant claims that an agreement to transfer the license is contrary to public policy and void. This claim is untenable now in Michigan since the enactment of PA 1933 (Ex Sess), No 8, § 17, as amended by PA 1937, No 281 (CLS 1940, § 9209–32 [Stat Ann 1943 Cum Supp § 18.988]), which enacted that licenses may be transferred with the consent of the commission and certain licenses shall be approved by the local legislative body. The word 'transferred' as here used implies and carries with it the making of an agreement of transfer. It is therefore not illegal in Michigan to agree to make a transfer. It is simply subject to the consent of the

commission and of the local legislative body." *Rood-voets* v. *Anscer,* 308 Mich. 360.

Specific performance may therefore be granted if there is no fraud, mistake or overreaching in the terms of the agreement.

"The mere fact that the defendant made a bad trade or bargain is not sufficient to defeat an application for specific performance, where no fraud, mistake, or overreaching is alleged; it is not the province of equity to undo a bargain merely because it is hard. Mere hardship alone or the mere fact that the contract was improvident when made is not sufficient to preclude relief where it is otherwise unobjectionable. There must be something more than the fact that a party had made a bad trade to relieve him from his obligation to perform it." 49 Am Jur, Specific Performance, § 60, p 75.

There is nothing in the record and it is not alleged in the pleadings that either of the parties to the agreement misunderstood its provisions nor is there any indication of misrepresentation or fraud. The terms of the undertakings entered into by the parties are clear and unequivocal, are not unusual in any respect and do not indicate unconscionable conduct or overreaching on the part of anyone.

If the defendants suffer hardship from the enforcement of their agreement, it is because they failed to carry out the provisions of their own commitments. Plaintiffs were not responsible for defendants' failure to pay Federal taxes.

"Where the hardship arises from defendant's own act, after bargain, he cannot complain of the results of his own conduct. The defendants 'cannot be permitted to avail themselves of impediments of their own creation.'" 6 Pomeroy's Equity Jurisprudence (3d ed), § 799, p 1320.

Under the circumstances here presented, we find no reason for denying to plaintiffs specific performance of defendants' promise to reassign the liquor license upon default under the provisions of the chattel mortgage.

Defendants contend for the first time in this Court that the agreement to reassign the liquor license should not be enforced by decree in chancery because it interferes with the right of redemption in the event of foreclosure of the chattel mortgage. We find no merit in that contention for the reason that the agreement to reassign is independent of the mortgage covenants and in no way precludes the defendants from redeeming the mortgaged property after foreclosure.

The decree appealed from is affirmed, except that part stating that the decree shall be deemed to constitute an application for transfer of the license in the event defendants fail to make such application. Should defendants fail to comply with the provisions of the decree, plaintiffs will be restricted to the remedy for contempt.

A decree will enter accordingly, costs to appellees.

Dethmers, C. J., and Butzel, Carr, Bushnell, Sharpe, and Reid, JJ., concurred.

Boyles, J., did not sit.