In the Matter of BEEFEATERS, INC., Debtor.

B.H. PETERSON, Trustee, Plaintiff,

v.

OLD KENT BANK & TRUST COMPANY, Personal Representative of the Estate of John Klanderman, Deceased, Defendant.

Bankruptcy No. HG 81 02885.
Adv. No. 81 1986.

United States Bankruptcy Court,
W.D. Michigan.

Feb. 24, 1983.

B.H. Peterson, trustee, plaintiff.

Thomas Sarb, Grand Rapids, Mich., for trustee, plaintiff.

Donald Worsfold, Grand Rapids, Mich., for defendant.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the court on the trustee's complaint to avoid a preference and to set aside certain liens. B.H. Peterson, the trustee, contends that the defendant, John Klanderman, perfected a security interest in certain of the debtor's personal property in contravention of § 547 of the Bankruptcy Code. Further, plaintiff-trustee alleges that security interests in fixtures and a liquor license were not properly perfected under the Uniform Commercial Code (hereinafter "U.C.C."). The matter was tried before this court on a stipulation of facts and submitted briefs.[1]

On October 8, 1980, John Klanderman entered into an agreement to sell a restaurant known as the Beefeater Room. Included in this sale were all fixtures, equipment, leasehold interest, and Michigan liquor license. The closing occurred on April 9, 1981, at which time the debtor executed a Promissory Note, financing statement, and an Agreement for Reassignment of Class C License and Leasehold Interest. Neither Mr. Klanderman nor Beefeaters, Inc. were record owners of the premises. Financing statements were filed with the Kent County Register of Deeds on April 10, 1981, and

with the Secretary of State on June 18, 1981. No financing statement or other recording was made by the seller as to the agreement to reassign the liquor license. On July 17, 1981, the debtor filed its petition under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 on September 24, 1981. On March 25, 1982, Debtor's remaining property and equipment, including the liquor license, were sold for $50,000. The trustee holds this sum, with defendant's liens, if any, attaching to the proceeds.

### Preferential Transfer[2]

There is really no dispute that the perfection of a security interest, here, constitutes a preferential transfer. All parties agree that the perfection did take place within the ninety day period preceding filing by the filing with the Secretary of State on June 18, 1981. Perfection within this time period can constitute a preference. *See,* 11 U.S.C. § 547(e)(2)(B); *In re Meritt,* 7 B.R. 876 (Bkrtcy.W.D.Mo.1980). The elements that the transfer be for the benefit of a creditor, and for or on account of an antecedent debt have been admitted. Under § 547(f), the debtor is presumed to have been insolvent during the ninety days immediately preceding the date of filing, and the defendant offered no evidence to rebut this presumption. The final element is that the transfer must have enabled the creditor to receive more than he would have in a Chapter 7 proceeding. A review of the schedules and the claims filed in this case reveal that the transfer would have enabled this creditor to receive more than in a Chapter 7 liquidation. Accordingly, I find defendant's lien on the personal property to be a preferential transfer under § 547 of the Bankruptcy Code. Those portions of the proceeds representing personal property of the debtor, therefore, are not subject to any lien of the defendant.

### Fixture Filing

The security agreement signed on April 9, 1981, granted a security interest in

---

1. This court has jurisdiction to entertain this matter under the emergency local rule adopted December 17, 1982, paragraph (d).

2. See 11 U.S.C. § 547.

all trade fixtures and equipment. A financing statement was filed with the Kent County Register of Deeds on April 10, 1981. Beefeaters and Klanderman were named as the debtor and secured party, however neither party had a record interest in the real estate. The financing statement contained the address of the premises where the secured property was located but did not set forth a legal description of the real estate. M.S.A. § 19.9402(5) [M.C.L.A. § 440.-9402(5)] sets forth the requirements for a fixture filing.[3] That statute provides, in pertinent part:

> (5) A financing statement ... filed as a fixture filing ... must show that it covers this type of collateral, must recite that it is to be recorded in the real estate records, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner.

Plaintiff-trustee has argued that this section requires a legal description in the financing statement. However, there appears to be no Michigan statute requiring a legal description in a mortgage. The authorities do not indicate that a legal description is required. Callaghan's states that the mortgaged property,

> ... must be described with sufficient particularity to enable the land to be identified.

> The rules applicable to the construction of descriptions in deeds also govern the construction of descriptions in mortgages.

17 Callaghan's Michigan Civil Jurisprudence, mortgages § 10 (1982). There is plenty of case law support that a legal

description is not required in a deed. Description by a common name well known in the community, *Goodenow v. Curtis*, 18 Mich. 298 (1869), or by street address, *Stamp v. Steele*, 209 Mich. 205, 176 N.W. 464 (1920); *Baller v. Spivack*, 213 Mich. 436, 182 N.W. 70 (1921) has been held to be adequate.

▋ The important test of the adequacy of a real estate description, and the test enunciated in the Official Comments to U.C.C. § 9–402(5) is

> ... that a description of real estate must be sufficient so that the fixture financing statement will fit into the real estate search system and the financing statement be found by a real estate searcher.

> \*   \*   \*   \*   \*   \*

> Where the debtor does not have an interest of record in the real estate, a fixture financing statement must show the name of a record owner, and Section 9–403(7) requires the financing statement to be indexed in the name of that owner. Thus the fixture financing statement will fit into the real estate search system.

U.C.C. § 9–402(5), Official Comments at 741 (1978). Here, there can be no doubt that the financing statement is inadequate.[4] Neither Mr. Klanderman nor Beefeaters, Inc. were record owners of the real estate. It would be impossible to find the security arrangement in a title search.

The law does provide that a financing statement which substantially complies with the requirements of § 9–402(5) will be effective despite minor errors not seriously misleading. M.S.A. § 19.9402(8) [M.C.L.A. § 440.9402(8)]. Case law recognized that under a system of notice filing a creditor is not required to file a technically perfect document. *In re Bennett*, 6 UCC Rep. 994 (Bkrtcy.W.D.Mich.1969). However, as Judge Nims has stated,

---

**3.** As set forth, this section reflects the amendments made by the Public Acts of 1978, No. 369. This amended section was effective at the time this transaction was entered into.

**4.** The trustee has also raised the argument that the financing statement is insufficient because it fails to recite that it is to be recorded in the real estate records. M.S.A. § 19.9402(5) [M.C.

L.A. § 440.9402(5)]. The court notes the noncompliance with this section, however, I make no finding whether this omission is significant enough to void the attempted prefection, or whether it is a minor error not seriously misleading. M.S.A. § 19.9402(8) [M.C.L.A. § 440.-9402(5)].

... although courts have been liberal in overlooking errors or deficiencies in descriptions, addresses, names, and even signatures, such liberality ceases when errors eliminate notice.

*In re Jones,* 11 UCC Rep. 249, 252 (Bkrtcy. W.D.Mich.1972). Here, the error in failing to list the record owner of the property bars a diligent creditor from finding this lien on fixtures. Such an omission allows the trustee to take an interest in the fixtures superior to that of the defendant. Accordingly, the interest of the defendant, John Klanderman, in fixtures of the debtor will be treated as an unsecured claim.

*Pretrial Order*

In reaching the decision that the security interest in fixtures was not properly perfected, this court has analyzed defendant's arguments based on the scope of the pretrial order. That order states, in part:

It is the position of the Trustee under Section 9402(5) of the Uniform Commercial Code that a legal description of the premises was necessary for a proper recordation.

Defendant contends that the trustee limited his argument to the alleged inadequate description of the real estate. It is the position of the defendant that the trustee is foreclosed from raising the issues of whether a financing statement perfecting an interest in fixtures must declare that it is to be recorded in the real estate records, and whether the record owner of the property must be listed, by the scope of the pretrial order. The trustee maintains that these two issues are within the scope of the pretrial order, or in the alternative, this court should amend that order.

Bankruptcy Rule 716 makes Federal Rules of Civil Procedure (FRCP) 16 applicable in adversary proceedings in the Bankruptcy Court. FRCP 16 states, in part, that:

The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those

not disposed of by admissions or agreements of counsel; *and such order when entered controls the subsequent course of action, unless modified at the trial to prevent manifest injustice.* (emphasis added).

■ Pretrial procedures are intended to be a flexible mechanism for preparing cases for trial. Courts have consistently recognized that the trial judge reserves the power to depart from a strict adherence to pretrial statements when the interests of justice would make such a departure desirable. *Cruz v. United States Lines Co.,* 386 F.2d 803, 804–805 (2d Cir.1967). Amendment of a pretrial order is governed by the "manifest injustice" standard, and is a matter within the discretion of the trial judge. *Wallin v. Fuller,* 476 F.2d 1204, 1208 (5th Cir.1973); *Ely v. Reading Company,* 424 F.2d 758, 763 (3rd Cir.1970). The Ninth Circuit has stated that:

District courts should generally allow amendments of pre-trial orders when "no substantial injury will be occassioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight". (citations omitted).

*Campbell Industrial v. M/V Gemini,* 619 F.2d 24, 27–28 (9th Cir.1980). In *Washington Hospital Center v. Cheeks,* 394 F.2d 964, 965 (D.C.Cir.1968), the court stated that among the factors to consider in amending a pretrial order are the possible hardship to the parties, and doing justice to the merits of the claim.

■ Here, I find the pretrial order should be amended to allow the trustee's arguments. No substantial injury will result to the defendant. He cannot really claim surprise by the amendment. The trustee's complaint was premised on a failure to comply with M.S.A. § 19.9402(5) [M.C.L.A. § 440.9402(5)] generally. In his brief filed on July 2, 1982, the trustee specifically set forth all the arguments he now raised. Oral argument was heard on August 10, 1982, and additional time for briefing was allowed. There is no prejudice to defend-

ant since there was adequate time to prepare. A significant factor weighing in favor of amending the pretrial order is the injustice that would result to the movant and to the merits of the claim if an amendment were not allowed. Further, these arguments are within the purview of the complaint. Pretrial conferences are scheduled on hectic motion days. It would be an injustice to have an issue that is within the complaint, foreclosed under those circumstances. Perhaps, the result would be different if the trustee was trying to now raise new issues not within the scope of the complaint. However, where the amendment does not greatly expand or change the issues for trial, and where defendant has ample time to respond to the additional arguments, justice favors granting an amendment. Therefore, I find an amendment to the pretrial order to be proper.

## Security Interest in Liquor License

At the closing on April 9, 1981, the debtor and Klanderman executed an Agreement for Reassignment of Class C Liquor License and Leasehold Interest. This agreement provided that if the debtor defaulted for three consecutive months or more on the promissory note payments, Klanderman could force the debtor to reassign all its interest in the business, including the liquor license. This agreement was clearly intended by the parties to stand as additional security for the note. No financing statement was filed. The seller did not make any recordings in an effort to perfect this interest. The trustee contends that he takes an interest superior to that of Klanderman because of this failure to perfect. The defendant, however, urges that under state law a liquor license cannot be the subject of a chattel mortgage as security interest.

The U.C.C. recognizes a much broader range of security interests than those encompassed by pre-UCC chattel mortgage law. Under the old law, the Michigan Supreme Court stated,

> ... the holder of liquor license does not thereby acquire a property right which

can legally be made the subject of a chattel mortgage.

*Mac Nicol v. Grant,* 337 Mich. 309, 315, 60 N.W.2d 290 (1953). Pursuant to the U.C.C., however, a number of courts have recognized that a creditor can take a security interest in a liquor license. *Paramount Finance Co. v. Cleveland's Peppermint Lounge, Inc.,* 3 UCC Rep. 991 (1965); *Bogus v. American National Bank of Cheyene, Wyoming,* 401 F.2d 458 (10th Cir.1968); *Paramount Finance Company v. United States,* 379 F.2d 543, (6th Cir.1967); *In re Coed Shops, Inc.,* 435 F.Supp. 472 (N.D.Fla. 1977); *In re Branding Iron, Inc.,* 7 B.R. 729 (Bkrtcy.E.D.Pa.1980). Some courts have specifically found that a creditor who takes a security interest in a liquor license, must perfect that interest to protect it from the reaches of a bankruptcy trustee. *Matter of Matto's, Inc.,* 9 B.R. 89 (Bkrtcy.E.D.Mich. 1981); *In re Camelot Court,* 21 B.R. 596, (Bkrtcy.D.R.I.1982).

In Michigan the issue is more difficult because of the Liquor Control Commission. Rule 19 of the Commission provides, in part:

> A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor.

Judge Brody in the *Matto's, supra* opinion did not discuss the impact of the rule. However, in *In re Rudy's Inc.,* 23 B.R. 1 (Bkrtcy.E.D.Mich.1981), Judge Walker held that because of this rule, one could not obtain a valid security interest in a liquor license. Rule 19 was found to be intended to exempt liquor licenses from validly being subject to a UCC security interest. *Supra* at 2.

Recently, Judge Woods, in *Michigan National Bank of Detroit v. McCormick,* 26 B.R. 869 (Bkrtcy.E.D.Mich.1983), addressed the history and impact of Rule 19. Judge Woods was able to avoid the impact of that rule. Rule 19 became effective on March 15, 1978, and the security interest involved was perfected on January 13, 1978. The court found nothing in the lan-

guage of that rule to indicate it was intended to be applied retroactively. *Supra,* at 874.

In this case, however, the transaction was entered into after the effective date of Rule 19. The creditor and debtor must have been aware that the Liquor Control Commission prohibited the taking of a security interest in a liquor license. For this court to now state that the parties should have ignored the Rule and perfected the interest is patently unfair. Accordingly, I find the defendant's rights in the liquor license did not have to be perfected according to the UCC. The trustee cannot take an interest, therefore, superior to that of the defendant.