In the Matter of James R. GULLIFOR and Patricia E. Gullifor, Debtors.

Susan HARRIS, Trustee,
Plaintiff-Appellee,

v.

MICHIGAN NATIONAL BANK–VALLEY and Alice Navarro,
Defendants-Appellants.

Civ. A. No. 82–10248.

United States District Court,
E.D. Michigan, S.D.

March 8, 1985.

Michael C. Reinert, Saginaw, Mich., for plaintiff-appellee.

Roseann Sendek, Larry L. Preston, Saginaw, Mich., for defendants-appellants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

■ Appellant Alice Navarro appeals from a decision of the Bankruptcy Court which held that the Appellee Trustee's interest in two liquor licenses was superior to her interest. Determinations as to the validity, extent or priority of liens are defined as core proceedings under the 1984 Amendments to the Bankruptcy Reform Act of 1978. 28 U.S.C. § 157(b)(2)(K) (1984). Accordingly, to properly decide this appeal, the Court must accept as correct the Bankruptcy Judge's findings of fact unless clearly erroneous. The Bankruptcy Judge's conclusions of law, however, are reviewed *de novo.* 28 U.S.C. §§ 157(c)(1) and 158 (1984). *See also Northern Pipeline Const. v. Marathon Pipe Line Co.,* 458 U.S. 50, 55 n. 5, 102 S.Ct. 2858, 2863 n. 5, 73 L.Ed.2d 598 (1982).

The facts of this case which are not in dispute, may be summarized briefly. In December, 1975, Appellant Navarro sold the business known as "P.J.'s Lounge" to James and Patricia Gullifor (Debtors). The sale included bar fixtures, furniture, equipment, personal property and two liquor licenses. The Debtors made a down-payment and gave Mrs. Navarro their promissory note for the balance due. Mrs. Navarro took a security interest in the equipment, furniture, fixtures and personal property to secure the remaining debt. A financing statement evidencing this debt was properly filed. However, no continuation statement was filed and the financing statement therefore lapsed. Accordingly, Mrs. Navarro did not claim to be a secured creditor with respect to those assets. At the time of the sale, the Debtors and Appellant Navarro also executed an agreement to reassign the licenses and leasehold in the event the Debtors defaulted in their payments.

On November 4, 1981, the Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. That petition was converted into a Chapter 7 liquidation on December 15, 1981. By order of the Bankruptcy Court dated July 12, 1982, all interest in the liquor licenses was awarded to the Trustee. It is the interest in these two liquor licenses which is now in dispute. Without discussing what type of interest Appellant possessed in the two licenses by virtue of the reassignment agreement, the Bankruptcy Court found that, at best, Appellant held an unperfected security interest. In the final analysis, however, the Bankruptcy Court appears to have held that the reassignment agreement was merely an executory contract and that Appellant's sole remedy is to sue the Trustee for breach of contract for failure to reassign the licenses to her.

In order to properly resolve this appeal, it is necessary to examine the reassignment agreement in the context of Michigan Administrative Rule 436.1119(3) [hereinafter Rule 19] and its history. Pursuant to state constitutional and statutory authority, the Michigan Liquor Control Commission [hereinafter MLCC] has authority to regulate the traffic of all alcoholic beverages within the state. *See,* Mich.Const. of 1908, Art. XVI, § 11 (1932); Mich.Const. of 1963, Art. IV, § 40 (1978); M.C.L.A. § 436.5 (1976); and M.S.A. § 18.975 (1976). Prior to 1976, the MLCC had evaluated all applications for liquor licenses pursuant to various informal and unpublished criteria. In 1976, the Michigan Court of Appeals issued its opinion in *Mallchok v. Liquor Control*

*Commission,* 72 Mich.App. 341, 249 N.W.2d 415 (1976). In *Mallchok,* the Court of Appeals held that the MLCC was required to promulgate and publish all rules and regulations used in awarding liquor licenses.

In response to the *Mallchok* decision, the MLCC adopted a set of emergency rules governing liquor licensing qualifications. *See generally, T.D.N. Enterprises v. Liquor Comm.,* 90 Mich.App. 437, 440, 280 N.W.2d 622, 624 (1979). These emergency rules expired on March 14, 1978 and the permanent MLCC rules came into effect on March 15, 1978. *See T.D.N. Enterprises, supra* and Michigan Administrative Rule 436.1119. Rule 19 was one of the permanent rules which came into effect on March 15, 1978.

Rule 19(c) now expressly prohibits the taking of a security interest in a Michigan liquor license. In pertinent part, the rule states "a security agreement between a debtor and a seller of a licensed liquor business, or between a debtor and a secured party, shall not include the license or alcoholic liquor."

The dilemma raised by Rule 19(c) is that while it forbids the taking of a security interest in a liquor license, 11 U.S.C. § 544(a)(1) gives the Trustee the rights and powers of a lien creditor. Accordingly, the Trustee in this appeal makes the argument that because she is a lien creditor and because the Appellant is not a secured creditor, her interest is superior to that of the Appellant. The Trustee makes this argument despite the fact that Appellant took every step available under state law to protect her interest in the two licenses.

■ In order to determine whether the Trustee's interest in the licenses as a lien creditor is superior to Appellant's interest, the Court must look to Michigan law to determine precisely what Appellant's status was. As already pointed out, under present Michigan law, it is clear that a creditor may not perfect a security interest in a liquor license. *See* Rule 19(c). How-

ever, to properly resolve this case, the Court must determine what Michigan law was in 1975, when Appellant and Debtors executed the reassignment agreement. Appellee argues that because the reassignment agreement was executed in 1975 and because Rule 19 was not enacted until 1978, Appellant could have and should have perfected a security interest in the liquor licenses in 1975. Because Appellant did not perfect a security interest in 1975, Appellee claims that her interest is superior to Appellant Navarro's.

■ Appellee appears to argue that the enactment of Rule 19 changed existing Michigan law. Accordingly, Appellee argues that the enactment date of Rule 19 is critical to a proper determination of this case. Nevertheless, the legislative history of Rule 19 and case law reveal that Rule 19 codified existing law; it did not create new law. That Michigan law forbade the perfection of a security interest in a state liquor license before the codification of Rule 19 is beyond question. *See Morse v. Liquor Control Commission,* 319 Mich. 52, 66, 29 N.W.2d 316, 322 (1947); *MacNicol v. Grant,* 337 Mich. 309, 315, 60 N.W.2d 290, 292 (1953); *Com'l Accept. Corp. v. Benvenuti,* 341 Mich. 100, 102–103, 67 N.W.2d 129, 130–31 (1954).

The conclusion that Appellant was prohibited from perfecting a security interest in the two licenses in question in 1975 is also supported by the minutes of the March 21, 1960 meeting of the Michigan Liquor Control Commission. Those minutes state that:

The Commission affirms the policy which has been followed that preliminary agreements, leases, chattel mortgages or land contracts are not to contain any restrictive clauses which involve the license as security or tend to dictate the future of the State's license; provided, however, that chattel mortgages may include a covenant to reassign the license to the seller in the event of default of

payments subject to the approval of the Liquor Control Commission.[1]

While the MLCC minutes and the Michigan Superior Court decisions in *Morse, MacNicol,* and *Benvenuti, supra* clearly establish that Michigan law prevented Appellant from perfecting a security interest in the liquor licenses in 1975, other authority demonstrates that Michigan law views reassignment agreements as something more than mere executory agreements. Having carefully reviewed the law, the Court believes that, as between Appellant and the Trustee, Michigan law would impose an equitable lien on the liquor licenses in favor of Appellant and relate that lien back to 1975. This lien, however, would in no way diminish the authority of the MLCC to approve or disapprove of the transfer of the licenses.

Important to an understanding of the Court's conclusion is a recognition that Michigan law draws a distinction between the "rights" of a license holder *vis-a-vis* the state and the rights of a license holder *vis-a-vis* other individuals. As between the licensee and the state, Michigan law views liquor licenses as being in the nature of a permit or privilege. *Com'l Accept. Corp. v. Benvenuti,* 341 Mich. 100, 103, 67 N.W.2d 129, 130 (1954). Accordingly, Michigan law concedes no power to private parties to limit the MLCC's authority to regulate commerce in alcoholic beverages. *Id., See also, Fitzpatrick v. Liquor Control Com'n,* 316 Mich. 83, 92, 25 N.W.2d 118, 121–22 (1954).

As between licensees and other private individuals, however, Michigan law does recognize differing equitable interests. The interests which Michigan law recognizes as arising out of the reassignment agreement are not merely contractual rights but, rather, are more in the nature of equitable interests in the license. Accordingly, various Michigan cases have held that "an agreement to assign a class 'C' liquor license is valid and performance thereof, under proper circumstances, may

be required by a court of equity". *Com'l Accept. Corp. v. Benvenuti,* 341 Mich. 100, 103, 67 N.W.2d 129, 130 (1954) *citing, Roodvoets v. Anscer,* 308 Mich. 360, 13 N.W.2d 850 (1944), and *MacNicol v. Grant,* 337 Mich. 309, 60 N.W.2d 290 (1953).

Accepting the fact that Michigan courts have recognized strong equitable interests arising out of an agreement to reassign a liquor license, the Court believes that, as against the Trustee, Appellant is entitled to an equitable lien on the two liquor licenses. *See generally, Warren Tool Co. v. Stephenson,* 11 Mich.App. 274, 281, 161 N.W.2d 133 (1968). The conclusion that the equitable lien doctrine is appropriate in this case is supported by the fact that the documents executed upon the sale of Appellant's business to Debtors evidenced a clear intent by Appellant to preserve as great an interest in the licenses as Michigan law allowed.

In reaching this conclusion, this Court recognizes that conflicting case law authority exists in this area. In its research, the Court found five cases on point, of which approximately half support the decision in this case. The five cases which the Court found are: *Matter of Matto's, Inc.,* 9 B.R. 89 (Bankr.E.D.Mich.1981); *In Re Rudy's Inc.,* 23 B.R. 1 (Bankr.E.D.Mich.1981); *Matter of McCormick,* 26 B.R. 869 (Bankr. E.D.Mich.1983); *Matter of Beefeaters, Inc.,* 27 B.R. 848 (Bankr.E.D.Mich.1983); *In Re Bernie's, Inc.,* 44 B.R. 296 (Bankr.E.D. Mich.1983).

In analyzing these cases, the Court believes that *Matter of Matto's, Inc., supra,* is of limited value in that it failed to discuss the importance of Michigan's prohibition against perfecting security interests in liquor licenses. In *In Re Rudy's Inc., supra,* the Court held flatly that "Rule 19 obfuscates a lender's security interest in a liquor license." *In Re Rudy's Inc.,* 23 B.R. 1, 2 (Bankr.E.D.Mich.1981). Nevertheless, *Rudy's* involved the priority of a Michigan

---

**1.** The official minutes of the MLCC are on file with the State of Michigan, Department of the Attorney General.

tax lien and inasmuch as the state of Michigan holds an ultimate power of approval over license transfers through the MLCC, this decision does not disturb the result reached in *Rudy's*.

In the two recent cases of *Matter of McCormick, supra*, and *Matter of Beefeaters, Inc., supra*, Courts recognized the dilemma created by the conflict of Rule 19 and 11 U.S.C. § 544(a)(1). More importantly, these cases recognized the rights of creditors to have liquor licenses reassigned to them in bankruptcy proceedings. In the *Matter of McCormick*, however, the Court concluded that, prior to the enactment of Rule 19, it was in fact possible to perfect a security interest in a liquor license. Accordingly, because the *McCormick* court found that the plaintiff in that case had perfected a security interest in the liquor license, the court avoided any discussion of the impact of Rule 19. *McCormick*, 26 B.R. at 873–74.

The *McCormick* court based its conclusion that it was possible to perfect a security interest in a Michigan liquor license prior to Rule 19 on a reading of Interim Rule 23(6). *Id.* Interim Rule 23(6) failed to expressly prohibit the taking of a security interest in a Michigan liquor license. Nevertheless, this court believes that such a conclusion is contrary to previously discussed Michigan case law and contrary to MLCC policy at that time.

Finally, in the *Matter of Beefeaters, Inc.*, 27 B.R. 848 (Bankr.E.D.Mich.1983), the court concluded that the defendant creditor's rights in a liquor license, which was transferred pursuant to the sale of a bar, was superior to the interest of the Trustee. The Court concluded

> In this case, however, the transaction was entered into after the effective date of Rule 19. The creditor and debtor must have been aware that the Liquor Control Commission prohibited the taking of a security interest in a liquor license. For this court to now state that the parties should have ignored the Rule and perfected the interest is patently unfair. Accordingly, I find the defendant's

rights in the liquor license did not have to be perfected according to the UCC. The trustee cannot take an interest, therefore, superior to that of the defendant. *Id.* at 853.

While the court in *Beefeaters* gave obvious weight to the fact that the transaction in the case before it had been completed after the effective date of Rule 19, this Court does not believe that the effective date of Rule 19 is dispositive of these cases. As pointed out, Rule 19 codified existing law; it did not set forth new law.

Accordingly, because the Court finds that Michigan law was the same before the enactment of Rule 19 as after, and because the Court finds that Michigan law gives a prior interest to the Appellant in this case, the judgment of the Bankruptcy Court is REVERSED.

However, because the two liquor licenses in question have been sold at public sale, the Court will do no more than to REMAND this case for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.