**In re Larry James KLINGBEIL and Cynthia Louella Klingbeil, Debtors.**

**Bankruptcy No. 3-89-983.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 30, 1990.

James M. Meehan, Minneapolis, Minn., for debtors.

Roger A. Nurnberger, Minneapolis, Minn., for First of Omaha.

## ORDER GRANTING DEBTORS' "MOTION FOR TURNOVER"

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court on July 24, 1989, for hearing on Debtors' motion for turnover. Debtors appeared by James M. Meehan, their attorney. First of Omaha, a creditor, appeared by its attorney, Roger A. Nurnberger. Upon the moving and responsive documents, counsel's acknowledgment of uncontested facts, and the record made at hearing, the Court makes the following order.

### FINDINGS OF FACT

#### A. Procedural Background.

1. Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 17, 1989.

2. On their Schedule B–3, Debtors scheduled an asset described as "involun-tary garnishment by Roger Nurnberger, Esq., on behalf of First of Omaha. Debtor alleges trustee's interest for purpose of claiming derivative exemption as cash or any other available exemption." Debtors valued this asset at $2,560.00.

3. The notice of meeting of creditors issued by the Clerk of this Court set April 26, 1989, as the date for the meeting of creditors in this case. The meeting was convened and concluded on that date.

4. Neither the Trustee∘ nor any other party in interest objected to Debtors' claim of exemption in the garnished funds or the right to recover them, within 30 days after April 26, 1989.

#### B. Facts Relevant to Debtors' Motion.

5. First of Omaha sued Debtors to collect on an account stated, apparently in the fall of 1988.

6. Roger Nurnberger, counsel for First of Omaha, served a pre-judgment garnishment summons upon Viking Vocational Center ("Viking"), Debtor Larry Klingbeil's employer, on October 12, 1988.

7. Viking paid Klingbeil twice per month. His pay periods ran from the first through the fifteenth days, and from the sixteenth through the final days, of each month.

8. After the service of the garnishment summons, Viking failed to withhold any wages from those owing to Klingbeil for the first pay period of October, 1988, on account of the garnishment. It did withhold a total of $1,602.80 from Klingbeil's wages for pay periods through December 15, 1988.

9. In late December, 1988 or early January 1989, Nurnberger served another garnishment summons upon Viking. During the months of January through March 1989, Viking withheld an additional $1,602.80 from Klingbeil's wages.

10. Judgment was entered against Debtors in First of Omaha's collection action on March 1, 1989.

11. After the entry of the judgment, Nurnberger levied upon the garnished sums in the hands of Viking by using a

writ execution. Under cover of a letter dated March 15, 1989, Viking forwarded the sum of $3,205.60 to Nurnberger.

12. Nurnberger has since disbursed the collected funds to First of Omaha, after retaining his attorney fees and costs.

## DISCUSSION

### A. Debtors' Standing to Invoke Avoidance Remedies.

■ Via this motion,[1] Debtors seek to utilize the derivative avoidance powers granted to them by 11 U.S.C. § 522(h):

The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section ... 544, ... [or] 547 ... of this title; and

(2) the trustee does not attempt to avoid such transfer.

First of Omaha's levy upon the funds in question "was not a voluntary transfer of such property by the debtor[s]," and Debtors revealed the fact of the transfer of the funds in their statements and schedules. Thus, Debtors could have satisfied the requirements of 11 U.S.C. §§ 522(g)(1)(A) and (B). Debtors' trustee did not attempt to avoid the transfer; he acknowledged that, had he done so, Debtors could have claimed the recovered funds as exempt. Debtors claimed any possible recovery as exempt in their Schedule B-4, and that claim of exemption was allowed by operation of 11 U.S.C. § 522(l) and BANKR.R. 4003(b). Thus, Debtors have the right to litigate the avoidance of the transfer, 11 U.S.C. § 522(h), and to keep the funds if the trans-

fer is avoidable, 11 U.S.C. §§ 522(i)(1) and (2).

### B. Debtors' Preference Claim under 11 U.S.C. § 547.

[2] Under 11 U.S.C. § 547(b):

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Debtors have the burden of proof on all of these elements. 11 U.S.C. § 547(g); *Brown v. First Nat'l Bank of Little Rock,* 748 F.2d 490, 491 (8th Cir.1984).

■ First of Omaha's counsel has narrowed the issues presented, by acknowledging that his client received an avoidable preference in the amount of $1602.80, the part of Klingbeil's wages which was subjected to garnishment and levy during the 90 days immediately preceding Debtors' bankruptcy filing. This concession is based on a tacit recognition: that the combination of the fixing and/or perfection of

---

1. Debtors' counsel should have brought this matter before the Court via adversary proceeding. *See* BANKR.R. 7001(1) and (2). Counsel for First of Omaha does not object to litigating this matter by motion and, indeed, encourages doing so in the stated interests of economy for both parties. To be sure, had Debtors sued this out by adversary proceeding, the mode of presentation would undoubtedly have been by a motion for summary judgment—the record on

which would have been indistinguishable from the present record. Given the relatively modest amount in controversy and the unnecessary duplication of expense which would result from a denial of this motion on purely procedural grounds, the Court will entertain it. However, this is not to be taken as a precedential waiver of the procedural distinctions of BANKR.R. 9014 and 7001; counsel should stand advised.

a garnishment lien on all wages earned during that period, and the levy on the garnished wages, enabled First of Omaha to advance its position in contravention of the policy of equality of treatment which underlies 11 U.S.C. § 547. Debtors are entitled to recover these funds from First of Omaha. *In re Straight*, 35 B.R. 445 (Bankr.D.Or.1983).

The issue, then, is whether any preferential transfer of the funds garnished *before* December 17, 1988, took place *on or after* that date. The amount in question is $1,602.80.[2] First of Omaha does not dispute that at all relevant times it was a creditor of Debtors, and that any transfer(s) of the subject funds were made on account of Debtors' antecedent debt to it. Debtors are presumed to have been insolvent for the purposes of any transfer made within the 90 days immediately preceding their bankruptcy filing. 11 U.S.C. § 547(f); *In re Ramy Seed Co.*, 57 B.R. 425, 427 (Bankr.D.Minn.1985).

The only element in contention, then, is 11 U.S.C. § 547(b)(5)—that is, whether First of Omaha received more by its collection effort than it would have through a hypothetical distribution in this case, absent its collection.[3] First of Omaha maintains that it held an enforceable garnishment lien against these funds at all relevant times; thus, it argues, its lien would have protected its rights to the funds even had it not levied upon them, and, as a result, it did not improve its position as to the subject funds during the preference period.

The legal issues are a little more complex than either counsel recognizes. There were two possible transfers of the subject funds within the 90–day period of vulnerability. The first is that which may have taken place upon the entry of judgment in favor of First of Omaha on March 1, 1989. The second is that which unquestionably took place when Viking forwarded the

funds to Nurnberger in compliance with his levy of execution. For analytical purposes, these transfers may be treated separately. *See In re Newcomb*, 744 F.2d 621 (8th Cir.1984) (recognizing that trustee in bankruptcy may invoke lien avoidance powers serially to avoid sequential pre-petition transfers).

### C.  First of Omaha's Secured Position in the Funds.

Under Minnesota law, pre-judgment garnishment is available to creditors only under limited circumstances:

> [A] plaintiff in any action in a court of record for the recovery of money may issue a garnishee summons before judgment therein in the following instances only:
>
> (a) following by at least 40 days services of the summons and complaint upon the debtor in the main action where judgment by default could be entered pursuant to Rule 55.01(1) of the Minnesota Rules of Civil Procedure ...

MINN.STAT. § 571.41 subd. 2. The statutes define the effect of pre-judgment garnishment:

> ... [S]ervice of the garnishee summons upon the garnishee shall attach and bind, to respond to final judgment in the action, all personal property of the judgment debtor in the possession of, or under the control of the garnishee and all indebtedness owing by the garnishee to the judgment debtor at the time of service and all nonexempt disposable earnings earned or to be earned within that pay period and within 60 days thereafter.

MINN.STAT. § 571.42 subd. 1.

While the garnishment statute does not use the word "lien" on its face, the courts have consistently construed the words "attach and bind" in MINN.STAT. § 571.42 subd. 1 as creating an inchoate lien against the subject asset in favor of the garnishor.

---

2.  For brevity, the funds garnished prior to December 17, 1988, will be referred to as "the subject funds."

3.  First of Omaha's defense thus is not based upon a comparison between the monetary benefit which it did gain as a purely unsecured creditor, and the pro rata distribution which it would have received in a hypothetical liquidation. The latter is the more common factual basis for a defense under 11 U.S.C. § 547(b)(5).

*See, e.g., Marsh v. Wilson Bros.*, 124 Minn. 254, 144 N.W. 959 (1914); *United States v. Erlandson*, 311 F.Supp. 399 (D.Minn.1969); *In re Brinker*, 12 B.R. 936 (Bankr.D.Minn. 1981). The courts also have interpreted the words "to respond to final judgment in the action" as meaning that this inchoate lien does not become perfected or enforceable until the entry of judgment in the main action against the debtor. *In re Unit Oil Co.*, 50 F.Supp. 264, 267–68 (D.Minn.1943); *In re Brinker*, 12 B.R. at 938. The judgment creditor's levy of execution against the garnished funds, as the equivalent of foreclosure, extinguishes this lien. *In re Brinker*, 12 B.R. at 938.

▮▮▮ The service of First of Omaha's first garnishment summons attached an inchoate lien to Klingbeil's garnishable wages, as he accrued his right to them during the period from mid-October to mid-December, 1988. First of Omaha acknowledges that this series of attachments constituted "transfers" within the broad definition of 11 U.S.C. § 101(50) [4], but First of Omaha notes that they all occurred outside the 90–day period.

▮▮▮ The question, however, is not limited to the mere attachment of the lien(s). The perfection of a previously-attached lien or security interest is also a "transfer" within the meaning of § 101(50) and within the contemplation of § 547(b). *In re Phillips*, 24 B.R. 712 (Bankr.E.D.Cal.1982); *In re Enlow*, 20 B.R. 480 (Bankr.S.D.Ind. 1982); *In re Meritt*, 7 B.R. 876 (Bankr.W. D.Mo.1980). Where perfection of a lien takes place within the 90–day period and gives the creditor enforceable secured rights otherwise good against all the world, the act of perfection may constitute a preferential transfer. *In re Ryder*, 73 B.R. 116 (Bankr.S.D.Fla.1987); *In re Beefeaters, Inc.*, 27 B.R. 848 (Bankr.W.D.Mich.1983).

> For the purposes of a preference action, A transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot ac-

quire a judicial lien that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1)(B). Under the Minnesota garnishment statute, the rights of the holder of a pre-judgment garnishment are vulnerable to those of garnishing judgment creditor; if a choate, post-judgment garnishment lien attaches before the holder of the pre-judgment garnishment lien can obtain entry of judgment, the post-judgment garnishment lien will take priority in its claim against the subject property. *Marsh v. Wilson Bros.*, 124 Minn. at 256, 144 N.W. at 959. Thus, the transfer of the subject funds garnished before December 17, 1988, was not perfected until March 1, 1989. That perfection took place within the 90–day period, and it elevated First of Omaha's rights in the subject funds from those of an unsecured creditor to those of a fully-secured creditor. By establishing First of Omaha's secured rights against all comers, the entry of judgment enabled First of Omaha to receive more in a hypothetical Chapter 7 liquidation than it would have otherwise. *In re Zachman Homes, Inc.*, 40 B.R. 171, 173–74 (Bankr.D.Minn. 1984). The perfection of its inchoate garnishment lien against the subject funds, therefore, was an avoidable preference. *Cf. In re Brinker*, 12 B.R. at 937 (post-judgment garnishment lien attaches and is perfected as of service of the garnishee summons; where this has occurred before the 90–day preference period, a levy within the preference period is not preferential.)

▮▮▮ It follows that First of Omaha's execution on the subject funds also was an avoidable preference. Absent the perfection of its garnishment lien, First of Omaha had only the rights of an unsecured judgment creditor against the accumulated wages. Its levy against the subject funds undeniably enabled it to receive more than it would have in a hypothetical Chapter 7 liquidation, whether Debtors had been able

---

**4.** [T]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including reten-

tion of title as a security interest and foreclosure of the debtor's equity of redemption; . . .

11 U.S.C. § 101(50).

to claim the subject funds as exempt.[5]

These conclusions do not quite end the analysis. Avoidance of these two transfers, accomplished alone, would place the subject funds back into Viking's hands, still subject to First of Omaha's inchoate garnishment lien. In that posture, First of Omaha's inchoate lien is vulnerable to the "strongarm" power of 11 U.S.C. § 544(a), which Debtors hold under derivation of 11 U.S.C. § 522(h). Section 544(a) provides in pertinent part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, ... may avoid any transfer of property of the debtor ... that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists

The extent of this hypothetical lien creditor's rights are determined by state law. *In re Greenhaven Village Apts. of Burnsville Phase II Ltd. Partnership*, 100 B.R. 465, 468 (Bankr.D.Minn.1989); *In re Minnesota Utility Contracting, Inc.*, 101 B.R. 72, 76–77 (Bankr.D.Minn.1989), *rev'd in part on other grounds*, 110 B.R. 414 (D.Minn.1990). For the same reasons that it made the perfection of the inchoate lien vulnerable, the holding in *Marsh v. Wilson Bros.* makes the inchoate lien itself avoidable under § 544(a)(1). The unperfected transfer which occurred upon the pre-December 17, 1988 garnishment therefore may be preserved for Debtors' benefit, 11 U.S.C. § 522(i)(2), and Debtors may recover the subject funds in their entirety, 11 U.S.C. § 522(i)(1). Though First of Omaha's counsel has requested that he and his client be allowed to retain the costs of suit

taxed against Debtors under Minnesota law, he has produced no authority for his argument. The transferred funds applied to costs are indistinguishable from those applied to Nurnberger's attorney fees and the underlying debt, and Debtors are likewise entitled to recover them.

IT IS THEREFORE ORDERED that, no later than *May 1, 1990*, First of Omaha shall turn over to Debtors, through their counsel, the sum of $3,205.60.

**5.** This case was denominated as a no-asset case, but the Trustee has not yet filed a report closing the estate as such. *Debtors' B Schedules do not* evidence anything of potential value for creditors.