BARR v PONTIAC CITY COMMISSION

Docket No. 78-381. Submitted January 5, 1979, at Detroit.—Decided June 5, 1979.

Prior to 1961, plaintiff Matthew Barr or his family operated a bar in Pontiac. In 1961, plaintiff sold the business, including the liquor licenses, retaining a security interest. In 1973, plaintiff foreclosed on the obligation, which was in default, and sought to have the liquor licenses transferred back to himself. The Michigan Liquor Control Commission required that plaintiff secure the recommendation of defendant Pontiac City Commission before it would transfer and renew the licenses. Defendant City Commission, without holding a hearing and without giving reasons for its action, adopted a resolution disapproving the transfer and renewal of the licenses. Plaintiff subsequently filed, without success, a series of appeals and requests for rehearings with both defendant Liquor Control Commission and defendant City Commission, and thereafter filed a complaint for superintending control. The Oakland Circuit Court, James S. Thorburn, J., ordered the Pontiac City Commission to recommend the approval of plaintiff's request for transfer and delayed renewal of the liquor licenses. Defendant City Commission appeals. *Held:*

1. A party seeking renewal of a liquor license has a vested property right which entitles him to a due process hearing.

2. Plaintiff was not guilty of laches, in that the record shows that he brought numerous appeals and requests for rehearings prior to seeking relief from the court.

3. An individual holding a reversionary interest in a liquor

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 822.

[2] 45 Am Jur 2d, Intoxicating Liquors § 174 *et seq.*
4 Am Jur 2d, Appeal and Error §§ 182, 183.
Right to hearing before revocation or suspension of liquor license. 35 ALR2d 1067.

[3] 45 Am Jur 2d, Intoxicating Liquors § 175 *et seq.*
Grant or renewal of liquor license as affected by fact that applicant held such license in the past. 2 ALR2d 1239.

[4] 4 Am Jur 2d, Appeal and Error § 178 *et seq.*

[5] 51 Am Jur 2d, Licenses and Permits §§ 53, 83, 84, 139.

license has a sufficient property interest in the license to entitle him to a due process hearing before a city commission at such time as said body considers its recommendation relative to the retransfer and renewal of the license.

4. The City Commission's refusal to recommend the retransfer and renewal of the liquor license was arbitrary and capricious in that the decision was not based upon the nature of the plaintiff's character but upon the City Commission's desire to parcel out liquor licenses to further the city's own economic development and master plan.

Affirmed.

1. APPEAL AND ERROR — EQUITY — DE NOVO REVIEW — FINDINGS OF TRIAL COURT — DIFFERENT RESULT.

Review of cases decided by a court exercising equity jurisdiction is *de novo;* however, great weight is accorded the trial court's findings, and reversal or modification will be undertaken only if the Court of Appeals is convinced that it would reach a different result.

2. INTOXICATING LIQUORS — LICENSES — RENEWAL — CONSTITUTIONAL LAW — DUE PROCESS.

A party seeking renewal of a liquor license has a vested property right which entitles him to a due process hearing.

3. EQUITY — INTOXICATING LIQUORS — LICENSES — LACHES.

A party seeking an order of a circuit court directing a city commission to recommend to the Michigan Liquor Control Commission that a liquor license, in which said party has a reversionary interest, be transferred back to him and renewed is not guilty of laches where the record shows that the individual brought numerous appeals and requests for rehearing before both the Liquor Control Commission and the city commission prior to seeking relief from the circuit court.

4. INTOXICATING LIQUORS — LICENSES — REVERSIONARY INTEREST — PROPERTY — CONSTITUTIONAL LAW — DUE PROCESS.

A party holding a reversionary interest in a liquor license has a sufficient property interest in the license to entitle him to a due process hearing before a city commission at such time as said body considers its recommendation relative to the retransfer and renewal of the license.

5. INTOXICATING LIQUORS — LICENSES — RENEWAL — LOCAL LEGISLA-TIVE BODY — ARBITRARY AND CAPRICIOUS ACTION.

A city commission's refusal to recommend the retransfer and

renewal of a liquor license to one holding a reversionary interest in said license is arbitrary and capricious where said refusal is not based upon the nature of the individual's character, but is rather based upon the city commission's desire to parcel out the licenses to further the city's own economic development and master plan.

*Sommers, Schwartz, Silver & Schwartz* (by *Edward Barry Stulberg),* for the plaintiff.

*Alger H. Strom,* Deputy City Attorney, for defendant Pontiac City Commission.

Before: N. J. KAUFMAN, P.J., and T. M. BURNS and BASHARA, JJ.

BASHARA, J. Defendant Pontiac City Commission appeals from an order of the trial court directing them to recommend approval to defendant Michigan Liquor Control Commission of plaintiff's request to transfer a class "C" and an S.D.M. license to him. The order also provided that the city recommend delayed renewal of the licenses for the 1973 through 1978 licensing years. The licenses were to be held in escrow pending possible sale by the plaintiff.

Plaintiff or his family had operated a bar business at the same location in the City of Pontiac since 1930. In 1961, plaintiff sold the business, which included the licenses,[1] but retained a security interest. One Robert Epps defaulted in 1973. Plaintiff foreclosed and sought to have the licenses transferred back to himself.

In response to the Liquor Control Commission's request for a recommendation, the defendant City Commission adopted a resolution of disapproval.

---

[1] At the time of the sale, plaintiff and his mother were the grantors of the business and licenses. Plaintiff's mother subsequently died, leaving plaintiff as the sole grantor at the time of the court proceeding.

No hearing on the petition or reasons for rejection were given. There followed a series of appeals, requests for rehearings and repeated denials, until a complaint for superintending control was filed in the circuit court.

The court ordered the defendant City Commission to hold a formal hearing with written notice to plaintiff, and to submit its recommendations in writing, together with reasons therefor. After another denial, and subsequent hearing before the court, the trial judge issued the order referred to at the outset of this opinion.

He reasoned as follows:

"THE COURT: The Court is of the opinion that case law establishes that there is a property interest in a liquor license under the laws of the State of Michigan, as the first premise. The second premise is that case law has established that it is appropriate and legally proper to retain a lien on a liquor license when it is sold, as has been done in this case.

"No. 3, that when there is a foreclosure which has been properly done as in this case the title reverts back to the original seller.

"Now, obviously 95 percent of the liquor licenses in the State of Michigan are held by people who are in business, often as sole proprietors, small bars, taverns, enterprises of that sort. The other category of liquor license can be and is the chain, the Hilton Hotel, the chain of drug stores, etc.

"Now, it appears to this Court that the property right has to be the same under the Constitution of the United States and the Constitution of the State of Michigan and cannot vary as to the quality of the particular individual, assuming the other standards of good character, etc., are present.

"There is no issue here as to that. The only issue is whether or not because the original seller, the now-holder of the property interest, is honest enough to indicate that he has retired, he no longer wants to

engage in the liquor business—he tried to sell it once. It was approved by the city. He now wants an opportunity to sell it again.

"Obviously the law which permits a lien would completely frustrate such an operation. When confronted with the liquor license held by a corporate chain there is never any question about it. They go on forever. They don't suffer illness, old age and death as does the private citizen.

"It seems to me that the two of them have to be treated equally. That the individual should be in the same position as the corporate owner of a liquor license.

"For those reasons the Court is going to grant the plaintiff's prayer and order that the license should be issued pursuant to law and for the purpose of resale within a reasonable period of time. The Court will sign an order to that effect."

It is well recognized that our review of cases decided by a court exercising equity jurisdiction is *de novo.* However, great weight is accorded the trial judge's findings and we will not reverse or modify unless convinced that we would have reached a different result. *Eyde v State of Michigan,* 82 Mich App 531; 267 NW2d 442 (1978), *Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), *Cheslek v Gillette,* 66 Mich App 710; 239 NW2d 721 (1976).

The central issue which confronts us therefore is whether the ruling of the trial judge was clearly erroneous.

To reach a determination of this primary question, we first turn to defendant's contention that the plaintiff is guilty of laches and is estopped from asserting the cause of action alleged in his complaint.

As a result of the Supreme Court rulings in *Bisco's, Inc v Liquor Control Comm,* 395 Mich 706; 238 NW2d 166 (1976), and *Bundo v City of Walled*

*Lake,* 395 Mich 679; 238 NW2d 154 (1976), one who seeks a renewal of a liquor license has a vested property right which requires a due process hearing.

Prior to the Supreme Court's holding in *Bundo,* judicial review of a city's recommendation as to a liquor license was not obtainable. In the case at bar, an appeal of the Liquor Commission's order would have been pointless. Plaintiff's only alternative at that time was to ask for rehearings of the Liquor Control Commission's determination, and for an order of superintending control in the circuit court. These steps were taken.

The complaint for superintending control was sought subsequent to the decision in *Bundo.* Therefore, the rights enumerated in *Bundo* and *Bisco's* apply. The record clearly indicates plaintiff's attempts to seek redress. He was not guilty of laches, and the trial court was correct in reaching the merits of the case.

Defendant City Commission argues that plaintiff was not entitled to a due process hearing because he had no property right in the license renewal. The City Commission contends that at best plaintiff had a mere unilateral expectation as an applicant for a license.

We agree with defendant's contention that there is no protected interest in a mere expectation a new license applicant or transferee might possess. *Bundo, supra,* and *Bisco's, supra.* However, we cannot say that the plaintiff's interest is to be equated with that of one petitioning for a new or transferred license.

In *Bundo, supra,* at 688-689, the Michigan Supreme Court looked for guidance to the cases of *Board of Regents v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972), and *Perry v Sinder-*

*man,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1970), to determine the nature of "property" protected by the due process clause of the Fourteenth Amendment. The Michigan Supreme Court referred to *Roth* and *Sinderman* because in *Kenosha v Bruno,* 412 US 507; 93 S Ct 2222; 37 L Ed 2d 109 (1973), the United States Supreme Court remanded an action for consideration under *Roth* and *Sinderman,* where a tavern owner claimed he was denied due process when a municipality denied renewal of his application for a liquor license without notice or a hearing.

In *Board of Regents v Roth, supra,* Justice Stewart discussed a property interest as follows:

"Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 US at 577.

Similarly in *Perry v Sinderman,* Justice Stewart discussed the nature of a property right.

"We have made clear in *Roth, supra,* at 571-572, that 'property' interests subject to procedural due process

protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by existing rules or understandings. *Id.,* at 577. A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 408 US at 601.

Heeding the foregoing, we look to the nature of the transaction and the agreements involved to classify the plaintiff's status. Plaintiff sold to Epps as his transferee. The sale was conditioned on the license transfer. Once transferred, the grantee sought and was granted regular renewals. Had he not defaulted on his obligation to plaintiff, he would have continued to have a property right in renewals under *Bisco's* and *Bundo.*

Similarly, the plaintiff sold something of value to his grantee. Without the liquor license, the value of the property diminishes greatly. While plaintiff's interest in the license is not "title" *per se,* it is a much stronger interest than that of a new applicant or proposed transferee.

We conclude that plaintiff has a reversionary interest, which is a property right, entitling him to the minimum due process hearing described in *Bundo.*

Finally, we must consider whether the trial court was correct in its finding that the defendant City Commission's action was arbitrary and capricious. The *Bundo* Court referred to *United States v Carmack,* 329 US 230; 67 S Ct 252; 91 L Ed 209 (1946), to describe the words "arbitrary and capricious".

"Arbitrary is: ' "[W]ithout adequate determining principle * * * Fixed or arrived at through an exercise of

will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, * * * decisive but unreasoned" '.

"Capricious is: ' "[A]pt to change suddenly; freakish; whimsical; humorsome" '."

*Bundo, supra,* at 703.

It is the position of defendant City Commission that it wishes to place the license in escrow to further its own economic development.[2]

It appears that the City Commission is placing licenses in escrow so that it can parcel them out to whomever they feel will suit their master plan.

Under the circumstances of this case, it does not seem to us that the trial judge was clearly erroneous in his determination.

Affirmed.

---

[2] It should be emphasized that plaintiff is not a speculator. Should he sell his ongoing business to another, the grantee would have to satisfy the City Commission and the Liquor Commission as to qualifications and location.