## In re BERNIE'S, INC., Debtor.

**Loucas YIANNATJI and Irene Yiannatji, and Empire Lounge, Inc., Plaintiffs,**

v.

**BERNIE'S, INC., and the Michigan Liquor Control Commission, Defendants.**

Bankruptcy No. 82 01021.

Adv. No. 83 0029.

United States Bankruptcy Court, E.D. Michigan.

April 26, 1983.

Jeffrey A. Chimovitz, Flint, Mich., for plaintiffs.

Thomas J. Giachino, Asst. Atty. Gen., for Michigan Liquor Control Com'n.

Robert L. Leech, Flint, Mich., Trustee, and for Bernie's, Inc.

NEWBLATT, District Judge, and STANLEY B. BERNSTEIN, Bankruptcy Judge.

A hearing on the Trustee's Motion for Summary Judgment having been heard as duly scheduled on March 22, 1983, and counsel for all parties to this Adversary Proceeding having been present and this Court having heard representations and stipulations of fact from the counsel, arguments of law, and the responses of each party to the positions taken by other parties, and being thereby advised in the premises, this Court makes the following findings of fact and applications of law set out below.

Because the decision reached at the conclusion of these findings of fact and application of law is different than the decision reached in the earlier decided Memorandum Opinion and Order of the United States District Court, Eastern District of Michigan, Southern Division, Flint in *Underground Flint, Inc., et al. v. Viro, Inc.*, entered on June 30, 1982 by United States District Court Judge Stewart A. Newblatt, this decision is being presented to him for his consideration and concurrent signature.

## I. FINDINGS OF FACT

1. Loucas Yiannatji and Irene Yiannatji are individuals who are the Lessors under a Lease Agreement dated July 3, 1979, between themselves and Lessee Bernie's, Inc., a Michigan Corporation and Debtor herein.

2. Empire Lounge, Inc. is a Michigan Corporation (whose sole shareholders are Loucas Yiannatji and Irene Yiannatji) which was the Seller and the self described secured creditor under a Contract for purchase of the business and related personal property dated July 3, 1979, between itself and buyer Bernie's, Inc., a Michigan Corporation and Debtor herein.

3. The lessee's interest and personal property and rights under the Liquor License in question here have been listed by Debtor Bernie's, Inc. in the schedule of

assets filed with its voluntary petition under Chapter 11 and are claimed to be unencumbered assets of the Debtor's Estate by the Trustee in these subsequent Chapter 7 proceedings.

4. The proposed and consummated sale of personal property, assignment of the Liquor License, and lease of real estate were both agreed to and executed subsequent to the March 15, 1978 effective date of Rule 436.119 ("Rule 19") of the Michigan Administrative Code. That provision is a rule promulgated by the Michigan Liquor Control Commission pursuant to its rule making powers. Section 3 of that provision reads as follows:

"A security agreement between a buyer and seller of a licensed retail business, or between a debtor and a secured party, *shall not* include the license of alcoholic liquor." (emphasis added)

5. Included in the information and directions provided to the Seller Empire Lounge, Inc. at the time that it applied for the necessary transfer of its Liquor License was form LC 125–R 4880–1226), which reads as follows:

"This is to advise you that a license to sell alcoholic liquor is a privilege granted by the State of Michigan. The Liquor Control Commission does not recognize any arrangement between a licensee and a secured party which involves the license as security, nor does the Commission have a form of security clause relating to the license which it will recognize as binding on the licensee. The courts have repeatedly held that there is no property right in a license.

"While the Commission is not bound by any agreement covering and/or including a license as security, it has no objection to a separate clause in the security agreement promising to reassign the license in the event of default, subject, however, to the consent and approval of the Commission. You are advised that in the event of default you must pursue your remedy in the civil courts and if the covenant is enforced by the courts, the Commission will then exercise its discretion on the matter. The Commission will not enforce such covenants without a prior determination by the proper court. The recommended wording should be substantially as follows: As further consideration for the Bill of Sale, it is agreed that in the event of default on any payments or conditions of the security agreement hereby executed, the purchaser will reassign to the seller all interest in the license, subject to the consent and approval of the Liquor Control Commission.

"Very Truly yours,
MICHIGAN LIQUOR
CONTROL COMMISSION"

6. Counsel for the Michigan Liquor Control Commission represented in Court that if the Commission learned that a security agreement and financing statement covering the Liquor License or alcoholic beverages had been executed by the parties and recorded, the Commission would take the position that such action was a violation of its rules and regulations of such magnitude as might justify revocation of the privileges accorded to the license holder under that license.

7. As reflected in Exhibit A of Plaintiff's Complaint quoted below, Bernie's, Inc. agreed as an express condition of the sale of the underlying business to it in the Contract of Sale dated May 7, 1979, as found in Section D, Paragraph 7 on Page 23 of that Agreement, that in the event that Bernie's, Inc. subsequently defaulted on its obligations, it would re-assign the Liquor Licenses to the Seller, Empire Lounge, Inc. Bernie's, Inc.'s promise was acknowledged in that same provision as being specifically enforceable by the Genesee County Circuit Court.

The Agreement embodied in Section D, Paragraph 7 was prepared in conformance with the regulations and rules promulgated by the Michigan Liquor Control Commission and specifically those quoted above. The language reads as follows:

"7. RE-TRANSFER OF LICENSES. The Buyer agrees that in the event of its default in the performance of its cove-

nants and agreements under the security agreement or in the event that it shall fail to make payment of sums in accordance with the promissory note (as said documents shall have been executed by the Buyer on the Closing Date in the form and content of the copies of the same as have been attached hereto), and upon the event of any undertaking of remedy as to such default made by the Seller pursuant to the provisions of said security agreement, the Buyer covenants and agrees that,

(i) Buyer will cause to be executed forthwith on its behalf all documents which are necessary, and shall cause to be undertaken all other actions which are necessary, to effectively submit for appropriate consideration by the Liquor Control Commission for the State of Michigan the transfer of the licenses to the Seller, or to the successor or assignee of the Seller; and,

(ii) Buyer, and its officers, stockholders and agents, will refrain from all acts which, in their undertaking, would prevent or impede any favorable consideration by the said Liquor Control Commission for such transfer of the Licenses.

In connection with the provisions of this Paragraph, upon any breach of the foregoing covenant made by the Buyer the Seller shall have the remedy of specific performance for the undertakings by the Buyer herein set forth, and the Circuit Court for Genesee County, Michigan, shall have competent jurisdiction to accord to the Seller such remedy; and, upon any entry of an Order granting to the Seller such relief of specific performance, such Order shall (if directing the undertakings to the Buyer to execute and deliver such documents necessary to make effectual application for transfer of the Licenses to the Seller, or to its successor or assignee) constitute, within any limitations imposed by the Liquor Control Commission for the State of Michigan, an effective application for the said transfer of the Licenses."

8. Empire Lounge, Inc. took all of the steps which the Michigan Liquor Control Commission allowed it to take to perfect its right to a reassignment under the Liquor Control Commission regulations rules and practices prior embodied in the regulations and forms quoted above before Bernie's, Inc. filed for protection under Chapter 11.

9. Bernie's, Inc. filed a voluntary Petition for relief under Chapter 11 on October 1, 1982.

10. Bernie's, Inc. was converted from Chapter 11 to Chapter 7 effective December 31, 1982.

11. Robert Leech was appointed Trustee of the Chapter 7 Debtor on or before January 3, 1983.

12. The above encaptioned Adversary Proceeding was filed February 3, 1983. Pursuant to an Order of the Bankruptcy Court entered March 4, 1983, Plaintiffs were ordered to add Michigan Liquor Control Commission as an additional party defendant.

13. Michigan Liquor Control Commission was added as a party as directed by this Court and its counsel appeared at the Hearing held March 22, 1983.

14. Counsel for the Yiannatjis and Empire Lounge, Inc. admitted at the March 22 Hearing that no financing statement had been recorded covering the personal property sold under the above described Sales Agreements, and that as to collateral within the scope of those Agreements, the Empire Lounge, Inc. held an unperfected security interest.

15. The Trustee and the Debtor consented to the return of possession of the real estate and improvements previously subject to the Debtor's leasehold interest to the Yiannatjis.

## II. APPLICATION OF LAW

A. The United States District Court, through an Opinion authored by District Judge Stewart A. Newblatt, held in *Underground Flint, Inc. v. Viro, Inc.* (No. 81–40230) that an assignor of a Liquor License who fails to perfect a security interest in

that license by filing a financing statement with the Secretary of State holds an unperfected security interest which becomes subordinate to the rights of a Trustee in Bankruptcy. That Opinion was expressly grounded upon the District Court's observation that "(the assignor) could have eluded the Trustee's priority simply by filing a Financing Statement, but since Appellant did not do so, it must now face the consequences". The contract of sale made in the *Underground* case was entered into in February, 1978, before the effective date of Rule 436.1119(3). The opinion in *Underground* makes no reference to Rule 19. Since Rule 19 prohibits an assignor from executing or recording the very documents which the opinion assumes would have been filed but for the assignor's simple neglect or ignorance, it is presumed that the Rule had not been brought to the Court's attention. Judge Newblatt was thus apparently deprived the opportunity to consider what effect the prohibition embodied in Rule 19 would have on his analysis of the Assignor's rights. In any event, unlike *Underground,* the agreements in the instant case were clearly subject to the prohibition enunciated in Rule 19 as communicated to the parties.

B. The effect of Rule 19 upon a sales agreement entered into after that Rule's enactment has been considered in at least one case, *In Re: Beefeater's, Inc.,* Case No. HG 81 02885, Adversary No. 81 1986, decided in the Western District of Michigan, by Bankruptcy Judge Lawrence E. Howard. Judge Howard held that the presence of Rule 19 did change the assumptions and conclusions that prior decided cases had relied upon. He noted that

"(This) transaction was entered into after the effective date of Rule 19. Creditor and Debtor must have been aware that the Liquor Control Commission prohibited the taking of a security interest in the Liquor License. For this Court to now state that the parties should have ignored the Rule and perfected the interest is patently unfair. Accordingly, I find that Defendant's rights in the Liquor License did not have to be perfected ac-

cording to the UCC. The Trustee cannot take an interest, therefore, superior to that of the Defendant.

Similarly, in the instant case, there is nothing in the record to suggest that the parties were unaware of Rule 19; in fact, all of the evidence and representations before this Court suggests that they not only were aware of the Rule, they attempted to draft Section D, Paragraph 7 to conform with that Rule and the Michigan Liquor Control Commission's resulting practice of allowing "reassignment" clauses. The power that the Bankruptcy Code grants to a Bankruptcy Trustee to defeat attempted liens or security devices is dependent upon state law. The underlying public policy and philosophy of law embodied in Judge Howard's Opinion that it is unfair to require a citizen of this state to break or violate one state law as a necessary step in obtaining a right provided by another portion of this state's law is a sound one that should be followed. Accordingly, the absence of a UCC 1 or other form of Financing Statement does not affect the validity of this reassignment clause or its effectiveness in the subsequently filed Chapter 11 and Chapter 7 proceedings.

A different result is required as to the non-alcoholic personal property sold to Bernie's, Inc. under the contract of sale. The absence of a recorded financing statement is fatal to any claim the seller could otherwise make regarding holding a perfected security interest in the sold items of personal property.

Accordingly, the following Summary Judgment is entered:

■ 1. The right of Empire Lounge, Inc. to present the subject liquor licenses to the Michigan Liquor Control Commission for retransfer to it is hereby affirmed. This Order shall stand as the contemplated Order of a Court directing such retransfer, subject to the Michigan Liquor Control Commission's approval of Empire Lounge, Inc. as an appropriate transferee.

2. The return of possession of the real property of Empire Lounge, Inc. free of

the leasehold interest of the Debtor is hereby confirmed.

3. The Motion of the Trustee for a Summary Judgment in his favor finding that Empire Lounge, Inc. is unsecured as to the remaining personal property is hereby granted. However, in the event that the parties disagree as to whether an item is personal property sold under the Bill of Sale or part of the reverted leasehold, such determination shall be made at an appropriately noticed hearing.