In re BOUFSKO, INC. d/b/a Petko's Family Restaurant & Abernathy's, Debtor.

Robert DONNELLY and Donald F. Bosker, Plaintiffs,

v.

BOUFSKO, INC., Defendant.

Bankruptcy No. 82–01078.
Adv. No. 83–0213.

United States Bankruptcy Court, E.D. Michigan, S.D.

Nov. 2, 1984.

Sander H. Simen, Flint, Mich., for plaintiffs.

John P. Siler, Flint, Mich., for defendant.

## MEMORANDUM OPINION

ARTHUR J. SPECTOR, Bankruptcy Judge.

As far as can be determined, this is the eighth formal opinion by the federal courts in Michigan on a question involving more state than federal concerns. The Court invites the Michigan Supreme Court to accept a certification under GCR 1963, 797 of a case containing the issues stated in Part II herein when an appropriate one comes along.[1]

This case is before the Court upon stipulated facts for the purpose of entry of judgment. On September 4, 1976, the plaintiffs sold their restaurant, with liquor license, to the defendant, with a substantial portion of the price to be paid in installments. The plaintiffs took a security interest in all of the tangible assets sold and obtained the defendant's written agreement to reassign to them the liquor license in case it defaulted on the terms of the purchase. On December 2, 1976, the plaintiffs filed at the office of the Michigan Secretary of State a UCC–1 financing statement listing the tangible assets as the collateral. The financing statement expired on December 2, 1981, five years after its filing. M.C.L.A. 440.9403(2); M.S.A. 19.9403(2)[2]. On September 23, 1982, the plaintiffs filed a replacement UCC–1 with the Secretary of State. Twenty-six days later the defendant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and, pursuant to 11 U.S.C. § 1107(a), thereby became possessed of all of the rights of a trustee in bankruptcy. The plaintiffs then brought this adver-

sary proceeding to compel the defendant to reconvey the license to them and to repossess the tangible assets sold. The issues in this case are as follows:

(1) Do the plaintiffs have a validly perfected security interest in the tangible assets of the restaurant sustainable against the trustee in bankruptcy?

(2) Is the plaintiffs' right to the liquor license superior to that of the trustee in bankruptcy?

## PART I

Although the defendant argued in its brief that the plaintiffs' filing of the replacement UCC–1 was a preferential transfer, and therefore its security interest should be held for naught, its answer neither included a counterclaim requesting the avoidance of the security interest nor even referred to 11 U.S.C. § 547. Although perfunctorily it appears that the defendant's theory (that the filing of the replacement financing statement a mere 26 days prior to the order for relief was a transfer avoidable by the trustee as a preference) is compelling; most of the elements of a cause of action for avoidance of a preferential transfer are neither pled nor adequately addressed in the stipulation of facts filed by the parties. Therefore, the Court declines to rule on that question.

Unless the defendant effectively exercises one of its trustee's powers of avoidance, the plaintiffs' security interest in the personalty is valid, as the security interest was clearly perfected prior to the filing of the petition for relief. If the defendant wishes to assert such a cause of action, it may do so either by filing a new suit or by

---

**1.** Although this case is not a proper one for certification, see note 5, *infra,* the issues which do arise here are also questions purely of state law. However, since the decisions of a federal district court and a bankruptcy court in this district are directly on point, they control. That is not to say, of course, that the opinions of the federal courts are correct: federal courts when interpreting matters of state law are merely giving their "best guess" as to what the state's highest court would rule on that point. *Sours v. General Motors Corp.,* 717 F.2d 1511, 1514 (6th

Cir.1983) and cases cited. If the time should ever come when the state supreme court decides these issues differently, then the federal courts must yield. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Reid v. Volkswagen of America, Inc.,* 575 F.2d 1175 (6th Cir.1978).

**2.** Hereafter, all references to the Michigan Uniform Commercial Code shall be cited as "U.C.C. § ——-——" in lieu of the full statutory citation.

amending its answer here to include a counterclaim which specifically requests such relief.

## PART II

At least six opinions from bankruptcy courts or federal district courts in Michigan have been issued since 1981[3] on the question of whether a party may obtain a security interest in a liquor license granted by the Michigan Liquor Control Commission.

Each judge[4] who considered it came to a somewhat different conclusion. Consequently, legal practitioners in the State of Michigan are without guidance on how to protect their clients in the sale of their restaurants or bars when a liquor license is part of the transaction. As the determination of this issue involves purely state law, it is obvious that the only definitive answer to this question can come from the Michigan Supreme Court. That is why that Court is invited to decide the issue.[5]

3. One opinion was rendered in 1969. *In re Plummer*, No. 68–5770 (Bankr.E.D.Mich. March 24, 1969) (Bobier, Referee in Bankruptcy).

4. They include District Judge Stewart A. Newblatt, and Bankruptcy Judges Bernstein, Brody, Howard, Walker and Woods (later District Judge), and Bankruptcy Referee (later Judge) Bobier.

5. This case is not a proper one for certification because many of the sub-issues which might be resolved do not arise here. Specifically, the parties have not raised the issue of whether the Michigan Liquor Control Commission validly adopted Rule 19. Nor do they argue that Rule 19, as being in apparent conflict with the provisions of Article 9 of the Michigan Uniform Commercial Code, is beyond the constitutional authority of the commission. *See In re Rudy's, Inc.*, 23 B.R. 1, 3 (Bankr.E.D.Mich.1981).

For example, U.C.C. § 1–201(37) defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." A liquor license is a form of personal property known as an "intangible". *Underground Flint, Inc. v. Viro, Inc.*, No. 81–40230 (E.D.Mich. June 30, 1982); *In re Matto's, Inc.*, 9 B.R. 89, 7 B.C.D. 351, 4 C.B.C.2d 136 (Bankr.E.D.Mich.1981). The agreement to reassign a liquor license is collateral to the underlying obligation of the debtor/purchaser of a bar or restaurant and secures performance of the payment and other requirements contained in the purchase documents. Accordingly, it could be forcefully argued that the purchaser's separate agreement to reassign a liquor license to the seller upon a specified default in the contract's terms creates in the seller nothing other than a "security interest" in the license. Furthermore, U.C.C. § 9–102 was intended by the legislature to bring all forms of consensual security interests in personal property, (with the exception of those listed in § 9–104), no matter how the transaction is nominally arranged, into the ambit of Article 9. *Nickell v. Lambrecht*, 29 Mich.App. 191, 199–200, 185 N.W.2d 155 (1970); *Uniroyal, Inc. v. Michigan Bank, N.A.*, 12 U.C.C. Rep. 745, 750 (Mich.Cir.Ct.1972); *Redisco, Inc. v. United Thrift Stores, Inc.*, 363 F.2d 11 (3rd

Cir.1966); *In re Brookside Drug Store, Inc.*, 29 U.C.C.Rep. 230, 237, 3 B.R. 120, 124 (Bankr.D. Conn.1980); *E. Turgeon Constr. Co. v. Elhatton Plumbing & Heating Co.*, 110 R.I. 303, 292 A.2d 230, 10 U.C.C.Rep. 1353, 1358 (1972). Specifically designated as one of the devices which create nothing more than a "security interest", as so defined, is an "assignment". In the transaction in question, the purchaser's agreement to "reassign" the license to the seller should be treated no differently than any other procedural artifice designed to avoid Article 9 analysis. *Id.* U.C.C. § 9–105(1)(h) defines a "security agreement" as "an agreement which creates or provides for a security interest". Unless the creditor has possession of the property, in order for the security interest so created to be effective, the following requisites must occur: (1) the agreement must be in writing; (2) the agreement must adequately describe the collateral; (3) the secured party must have given value; and (4) the debtor must have acquired rights in the collateral. U.C.C. § 9–203(1). In cases like the one at bar, the reassignment agreement is obviously in writing; the collateral, i.e., the liquor license, is adequately described; the secured party obviously parts with value in that he parts with title and possession of the establishment as well as the license in question; and once the debtor has obtained the liquor license from the M.L.C.C., he obviously has acquired rights in the collateral. Thus, traditional Article 9 analysis would seem to apply. Most notable, however, is U.C.C. § 9–104, which itemizes the various "things to which Article 9 does not apply". That list does *not* include a "liquor license" as one of those "things". Thus, a strong argument can be made that Rule 19 is an attempt by an administrative agency to write legislation which directly contradicts and detracts from statutory rights enacted by the elected legislature and governor. The question of the commission's right to effect such changes would seem to be at least colorable.

An alternative way of looking at it is that Rule 19 is simply ineffective. If courts were to hold that the "agreement to reassign", which the commission feels is an acceptable device, is indeed nothing other than a security agreement, then

■ Two points now seem to be settled beyond dispute. The first is that a liquor license is "property". *Paramount Finance Co. v. United States*, 379 F.2d 543 (6th Cir.1967); *Bundo v. Walled Lake*, 395 Mich. 679, 238 N.W.2d 154 (1976).[6] The second is that such property is "property of the estate" for purposes of § 541 of the Bankruptcy Code. *In re Matto's, Inc.*, 9 B.R. 89, 7 B.C.D. 351, 4 C.B.C.2d 136 (Bankr.E.D.Mich.1981); *Underground Flint, Inc. v. Viro, Inc.*, No. 81–40230 (E.D.Mich. June 30, 1982); *see also In re McCormick*, 26 B.R. 869 (Bankr.E.D.Mich. 1983); *In re Rudy's, Inc.*, 23 B.R. 1 (Bankr. E.D.Mich.1981).

The question that is still unresolved is whether a party may legally obtain a security interest in a liquor license. On the theory that the license represents "intangible property", as defined by U.C.C. § 9–106, the following cases hold that one may obtain a valid security interest in a liquor license: *In re Matto's, Inc., supra; Underground Flint, Inc. v. Viro, Inc., supra; In re McCormick, supra*. On the theory that state law prohibits the taking of a security interest in a liquor license, and therefore holding that one may not lawfully obtain such a security interest in Michigan are the following cases: *In re Beefeaters, Inc.*, 27 B.R. 848 (Bankr.W.D.Mich.1983); *In re Rudy's, Inc., supra; Yiannatji v. Bernie's, Inc.*, 44 B.R. 296 (Bankr.E.D.Mich. 1983). The point where they differ is the effect of Section R436.1119(3) of the Michigan Administrative Code, commonly referred to as Rule 19 of the Michigan Liquor Control Commission. That rule states in pertinent part:

"A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor."

■ Each of the cases in the former group involved transactions which occurred prior to the formal adoption of Rule 19. Each of the cases in the latter group involved transactions which occurred after the adoption of Rule 19. The case at bar involves a transaction which occurred prior to March 15, 1978, the date of the adoption of Rule 19.[7] Thus *In re Rudy's, Inc., In re Beefeaters, Inc.*, and *Yiannatji v. Bernie's, Inc.*, are distinguishable. In *Underground Flint, Inc. v. Viro, Inc.*, and *In re Matto's, Inc.*, the sellers had failed to file financing statements to perfect their security interests in the debtors' intangible property: the liquor licenses. The results were that the security interests were held to be unperfected and the trustees were held to have superior claims to them under 11 U.S.C. § 544 and U.C.C. § 9–301(1)(b).[8] In *In re McCormick*, the seller had filed the

all a putative secured creditor need do is file that "agreement to reassign" as a financing statement with the Secretary of State. By simply recording the document at that office, a creditor would be confident of not offending the commission while still protecting its rights under the Uniform Commercial Code. If the creditor wishes to keep the details of the transaction from public disclosure, an acceptable alternative would be to merely file a regular UCC–1 financing statement listing the collateral as "rights generated under an agreement to reassign a Class C (for example) liquor license subject to the approval of the M.L.C.C." Either way, the creditor could maintain the position with the commission that it did no more than obtain an agreement to reassign the license (of which the commission approves), and yet perfect under the U.C.C. whatever U.C.C.—generated rights that agreement gave it. Certainly nothing in Rule 19 requires a party not to publicly record a document of which the commission otherwise approves.

6. *Also see In re Plummer, supra*, and cases cited therein.

7. Although it is argued that the commission informally applied such a rule even prior to its formal adoption, the Court will disregard "informal practices" of the commission which were never reduced through due process to a formal rule. *Mallchok v. Liquor Control Comm.*, 72 Mich.App. 341, 249 N.W.2d 415 (1976). For this reason, the plaintiffs cannot argue that they would have violated "state law" if they had filed a financing statement noting a security interest in the license at the time of the transaction. *Compare Yiannatji v. Bernie's, Inc.*, 44 B.R. 296 (Bankr.E.D.Mich.1983); *In re Beefeaters, Inc.*, 27 B.R. 848 (Bankr.W.D.Mich.1983).

8. That section provides that an unperfected security interest in property is subordinate to the rights of a lien creditor in that same property. Since a trustee in bankruptcy is defined in

financing statement and so had a perfected security interest in the license. The result there was that the seller's right to the license was held superior to the trustee's. In the case at bar the seller did not file a financing statement. The result by now is obvious: the plaintiffs' security interest in the liquor license was not and is not perfected, and so the trustee's claim thereto is superior under 11 U.S.C. § 544; U.C.C. § 9–301(1)(b). Therefore, they cannot compel the defendant to reassign the license to them.[9]

The Court will allow the defendant twenty days from the date of the entry of this opinion to either amend its answer to set forth a counterclaim under 11 U.S.C. § 547 or bring a separate action thereunder, in default of which an order may be submitted by the plaintiffs wherein the Court will grant them summary judgment as to the tangible personalty. If the defendant timely acts, however, the case will proceed to pretrial conference, dispositive motions, and/or trial, as the case may be. With respect to the liquor license, the Court will grant the defendant's motion for summary judgment; therefore, the defendant may submit and the Court will sign an order to that effect.

U.C.C. § 9–301(3) as a "lien creditor" from the date of the filing of the bankruptcy, it is clear as a matter of state law that the trustee's rights in the collateral are superior to those of a creditor holding an unperfected security interest therein.

9. The license was sold during the pendency of this case by consent of the parties and upon the approval of the Court. This case therefore involves the parties' relative rights to the proceeds of that sale.