In the Matter of RATCLIFF ENTER-
PRISES, INC., Debtor.

Bankruptcy No. 84–02465–G.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Nov. 21, 1984.

Sandra A. Hazlett, Ann Arbor, Mich., for debtor.

Kenneth M. Schneider, Detroit, Mich., for Trustee.

Basil T. Simon, Detroit, Mich., Trustee.

Lewis B. Daniels, Southfield, Mich., for Great Lakes Recreation Co.

## MEMORANDUM AND ORDER ABANDONING A CLASS "C" LIQUOR LICENSE

RAY REYNOLDS GRAVES, Bankruptcy Judge.

This matter comes before the Court on the Trustee's Application to Abandon or Sell Equipment and a Class "C" Liquor License. The Court is asked to determine whether the trustee has a priority interest in a Class "C" liquor license over secured creditors.

Great Lakes Recreation Company is the owner of Thunderbird Lanes, a bowling alley located in Ypsilanti, Michigan. On March 16, 1981, Great Lakes leased the premises to Ratcliff Enterprises, Inc. (Debtor) for a period of ten years, com-

mencing March 16, 1981 and continuing through February 28, 1991, at a monthly rental of $7,555.56.

On October 30, 1981, Thunderbird Lanes (Great Lakes) and the Debtor executed an "assignment of liquor license" as security for the full and timely payment and performance of all obligations of indebtedness. The agreement also provides that in the event of default, the Debtor shall "transfer, assign and set over" all of the rights, power, and privileges in the business conducted under the license, subject only to the approval of the Michigan Liquor Control Commission.

Two years later, on July 8, 1983, Debtor obtained a promissory note in the amount of $10,000 from Michigan National Bank of Ann Arbor (Bank). The note was secured by the Debtor's tangible assets, general intangibles, contract rights, instruments, and chattel paper as defined by the Michigan Uniform Commercial Code. The security interest was properly perfected on July 13, 1983.

Beginning in December 1983 and continuing through May of 1984, the Debtor was unable to make rental payments. As of the date of filing this petition in bankruptcy, Great Lakes asserts a claim of $45,333.36. On June 12, 1984, the Fourteenth Judicial District of the State of Michigan entered a judgment for possession in favor of Great Lakes.

On June 28, 1984, Debtor filed a petition under Chapter 7 of the Bankruptcy Code. The trustee has filed an application to sell equipment and a Class "C" liquor license. The application discloses an offer of $3,000 by Great Lakes for the equipment and $8,000 for the license.

On August 21, 1984, the Bank filed objections to the sale asserting, *inter alia* that the combined interest of the Bank and Great Lakes exceeded the value of the assets. The Bank and Great Lakes subsequently filed a joint petition to abandon all the assets, including the liquor license, in

their favor. The bank asserts a claim of $9,689.99 while Great Lakes seeks approximately $30,000 from the Debtor. Each maintains it possesses a valid possessory interest in the liquor license.[1] By their estimates the property of the estate is valued at $13,000 leaving no value to the estate. In response to objections to the joint petition, the Bank requested the license be abandoned in favor of Great Lakes.

The current discussion on the validity of a security interest in a Class "C" Liquor License in the State of Michigan began with *Bundo v. Walled Lake*, 395 Mich. 679, 238 N.W.2d 154 (1976). Guided by the decision in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Michigan Supreme Court held that a liquor license is property.

In the same year, the Michigan Court of Appeals in *Mallchok v. Liquor Control Commission*, 72 Mich.App. 341, 249 N.W.2d 415 (1976) held that the evaluation of applicants by the Michigan Liquor Control Commission (M.L.C.C.) for liquor licenses were to be conducted in accordance with promulgated and published rules. Consistent with the *Mallchok* decision, the MLCC adopted Rule 23(6). The rule evolved into what some might call the infamous Rule 19. Rule 19 provides in pertinent part:

A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor.

Mich. Admin. Code R.436.1119.

Since 1981, seven decisions have been rendered by the United States Bankruptcy Courts in the state of Michigan on security interest in liquor licenses. While the cases differ in result, each holds that a liquor license is property; but the real question

---

1. Reflecting the state of flux regarding the validity of security interest in liquor licenses as a result of Michigan Administration Code R 436.-result of Michigan Administration Code R 436.-

1119 discussed *infra,* the financing statement includes general intangibles, but does not specifically identify a liquor license.

appears to be whether, in light of Rule 19, a liquor license is property embraced by the Uniform Commercial Code. There is a split in authority on this issue. *Bosher v. Boufsko*, 44 B.R. 98 (Bkrtcy.E.D.Mich. 1984), *In re McCormick*, 26 B.R. 869 (Bkrtcy.E.D.Mich.1983), *Underground Flint, Inc., v. Viro*, No. 81–40230 (E.D. June 30, 1982), *In re Matto's*, 9 B.R. 89 (Bkrtcy.E.D.Mich.1981), hold that a security interest can be obtained in a liquor license. *In re Beefeaters, Inc.*, 27 B.R. 848 (Bkrtcy.W.D.Mich.1983); *Yiannatji v. Bernies, Inc.*, 44 B.R. 296 (Bkrtcy.E.D.Mich. 1983), *In re Rudy's Inc.*, 23 B.R. 1 (Bkrtcy. E.D.Mich.1981), hold that Rule 19 prohibits the taking of a security interest in a liquor license.

Article 9 of the Uniform Commercial Code (UCC) was adopted by the Michigan Legislature to simplify the basic form and structure of secured transactions. To facilitate business affairs in the state Article 9 emphasizes the intention of the parties, and function rather than the form of the transaction. Mich. Comp. Laws Ann. § 440.9102 Commentary; Barklay Clark, *The Law of Secured Transactions Under The Uniform Commercial Code.* ¶ 1.3(1). (1980 and Supp.1984).

■ Article 9 applies to any transaction which is intended to create a security interest in personal property as defined in Mich.Com.Laws Ann. § 440.9102, including general intangibles. A liquor license is a general intangible, and therefore property within the meaning of Article 9. *Paramount Finance Co., v. U.S.*, 379 F.2d 543 (6th Cir.1967); *In re Matto's, Inc., supra., Bundo v. Walled Lake, supra.* Regardless of the form, if the parties intend to create a security interest in a liquor license it comes within the ambit of Article 9.

The default provision in the agreement between Great Lakes and the Debtor is similar to the provision found in *Boufsko* and *McCormick, supra.* In each case the Court held that the contract terms for an assignment upon default create a security interest in a liquor license. In *Boufsko,* Judge Spector states that the purchaser's

agreement to reassign the liquor license to the seller should be treated no differently than any other procedural device designed to avoid Article 9 analysis. *Boufsko, supra.*, at 100, n. 5. *See also, Clark, supra.*, ¶ 1.3(1).

■ The M.L.C.C. was created by the Michigan legislature pursuant to the Michigan Liquor Control Act of 1933. Mich. Com.Laws Ann. § 436.1 et seq. The M.L. C.C. was charged with the responsibility of regulating the traffic of alcohol in the state of Michigan. In the area of regulation of the traffic of alcohol the M.L.C.C. authority is plenary, *Zukaitis v. Fitzgerald*, 18 F.Supp. 1000 (1937), *Mutchall v. City of Kalamazoo*, 323 Mich. 215, 35 N.W.2d 245 (1948), but the commission's authority is limited to the regulation of alcohol. *Fitzgerald, supra; Bundo v. Liquor Control Comm.*, 92 Mich.App. 20, 283 N.W.2d 860, (1979). If, therefore, the aim of Rule 19 is to regulate the perfection of security interest which is controlled by Michigan statute, the regulation would be preempted. *Id.* at 25, 283 N.W.2d 860.

If a contrary view were to prevail, the most significant impact would be on the businesses, small bars, taverns, and enterprises in the State of Michigan which are often owned by sole proprietors whose very existence hinge on the possession of a liquor license. In adopting the Trial Court's findings, the Court in *Barr v. Pontiac City Commission*, 90 Mich.App. 446, 282 N.W.2d 348 (1979) analyzed the problem thusly:

[N]inety-five percent of the liquor licenses in the state of Michigan are held by people who are in the business, often as sole proprietors, small bars, taverns, enterprises of that sort. The other category of liquor licenses can be and is the chain, the Hilton Hotel, the chain of drug stores, etc.

[I]t appears to this Court that the property right has to be the same under the Constitution of the United States and the Constitution of the State of Michigan cannot vary as to the quality of the particular individual, assuming the other

standards of good character, etc. are present... when confronted by a liquor license held by a corporate chain there was never any question about it. They go on forever, they do not suffer illness, old age, and death as a private citizen. It seems to me that the two of them have to be treated equally, that the individual should be in the same position as the corporate owner of a liquor license.

90 Mich.App. 446, 449, 450, 282 N.W.2d 348.

"Without the liquor license, the value of the property diminishes greatly." *Bunn v. Liquor Cont. Comm.*, 125 Mich.App. 84, 91, 335 N.W.2d 913 (1983). Without the ability to provide a security interest in a liquor license the opportunity to obtain financing is substantially impaired. Moreover, it would be patently unfair to a holder of a perfected security interest to find that its interest is junior to a secret lien, which the UCC and the Bankruptcy Code are designed to protect against.

In so finding the Court does not pass on the validity of Rule 19. That task lies within the province of the Michigan Supreme Court. Rather, we give great deference to the Michigan Supreme Court's holding in *Bundo v. Walled Lake, supra.*, and the adoption of the UCC by the Michigan legislature, and find a liquor license to be property within the meaning of Article 9. Great Lakes, therefore, possesses an unperfected security interest which must yield to the interest of the bank.

The bank possessed a perfected security interest in the liquor license on the date the Debtor filed for relief. Property of the estate is comprised of all legal and equitable interest of the Debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). The bank, therefore, has priority over the interest of the trustee. Accordingly, the petition for abandonment of the liquor license is GRANTED in favor of the bank and AGAINST Great Lakes.

IT IS SO ORDERED.