In re Alan K. PIKE, d/b/a Daisey Mae's and Pine Village Apartments, Debtor.

ANDRIACCHI'S, INC., a Michigan Corporation, and Miners' First National Bank & Trust Company of Ishpeming, Michigan, a National Banking Association,

v.

Alan K. PIKE and Stephen S. Johnson, Trustee.

No. M85–254 CA2.

United States District Court, W.D. Michigan, N.D.

June 9, 1986.

Raoul G. Robar, Ishpeming, Mich., for Andriacchi's.

James R. Jessup, Marquette, Mich., for Miners'.

Donald W. Bays, Marquette, Mich., for Alan K. Pike.

Stephen S. Johnson, Marquette, Mich., Trustee.

## OPINION

MILES, Senior District Judge.

This appeal arises from a final order of the bankruptcy court dated August 13, 1985. That order granted the appellees superior and prior rights to liquor licenses of the debtor and ordered the trustee to abandon the licenses.

On November 14, 1983, the debtor, Alan K. Pike, entered into a purchase agreement with Andriacchi's Inc., one of the appellees. The agreement was for the sale of a bar and restaurant. Pike purchased the real property on a land contract and the personal property by way of a promissory note. Both the note and the contract were secured by an agreement stating that default on either the note or the contract would be construed as a default on both documents. Upon such default, the agreement provided that the debtor would reassign the liquor licenses to Andriacchi's. This agreement between Andriacchi's and the debtor was never recorded in the Marquette County Register of Deeds, or with the State of Michigan.

The personal property of the debtor was also subject to a security interest held by the Miner's First National Bank & Trust of Ishpeming (hereinafter the "bank"). The bank is also an appellee in this action.

On November 30, 1984, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Michigan, Northern Division. In the bankruptcy court, appellees Andriacchi's and the bank commenced an adversary proceeding against the debtor and Stephen S. Johnson, the duly appointed and qualified trustee of the bankrupt's assets. Appellees sought a determination that their purported interests in the liquor licenses were superior to any claim that the trustee may have had in the liquor license. In a brief opinion and order dated August 13, 1985, the bankruptcy court ruled that neither the bank nor Andriacchi's were required to perfect their security interests in the liquor licenses.

In order to have lien rights superior to the trustee, perfection is required pursuant to article 9 of the Uniform Commercial Code (U.C.C., codified at Mich.Comp.Laws Ann. § 440.9101 *et seq.*). The bankruptcy court's decision relied on a regulation of the Michigan Liquor Control Commission (M.L.C.C.) and a prior holding by the bankruptcy court in the Southern Division of the Western District of Michigan, *In The Matter of Beefeaters Inc.*, 27 B.R. 848 (Bkrtcy.W.D.Mi.1983). The *Beefeaters* case had adhered to the questioned regulation. That regulation is Rule 19 which in relevant part provides as follows:

A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor.

[Michigan Administrative Rule 436.-1119(e) ].

The facts in this case are undisputed, and as such the fact findings made by the bankruptcy court will not be reviewed *de novo*, but will be accepted on their face. However, the legal question presented by this case will be scrutinized by this Court.

### Discussion

The problem presented in this case is simply that Rule 19 runs directly contrary to the priority provisions of the U.C.C. *See* Mich.Comp.Laws Ann. § 440.9101 *et seq.* The U.C.C. requires perfection of security interests in accordance with statutory guidelines, which includes the requirement that a financing statement be filed with the county clerk or with the Secretary of State detailing the interest secured. Rule 19 appears specifically designed to exempt liquor licenses from the purview of article 9 of the U.C.C.

 Michigan law clearly holds that a liquor license represents a property interest. *Bundo v. Walled Lake,* 395 Mich. 679, 238 N.W.2d 154 (1976); *Mallchock v. Liquor Control Commission,* 72 Mich.App. 341, 249 N.W.2d 415 (1976). As a property interest, a liquor license falls within the ambit of the U.C.C. Article 9 of the U.C.C. applies to any transaction which is intended to create a security interest in personal property. *See* Mich.Comp.Laws Ann. § 440.9102(1)(a). Personal property includes "general intangibles." A liquor license constitutes a general intangible, and therefore is property within the meaning of Article 9. *Paramount Finance Co. v. United States,* 379 F.2d 543 (6th Cir.1967); *In re Matto's Inc.,* 9 B.R. 89 (Bkrtcy.E.D. Mi.1981); *Bundo v. Walled Lake, supra.* Thus, according to the U.C.C. as adopted by the Michigan Legislature, a security interest in a liquor license must be properly perfected in order to be secure. Proper perfection includes making a public filing of a financing statement. Without taking these necessary steps, anyone holding a security interest in a liquor license would hold the status of an unsecured creditor.

In the present case, the trustee is afforded the rights of a lien creditor pursuant to 11 U.S.C. § 544(a)(1). That means that his rights to the assets of the estate are superior to that of unsecured creditors. Thus, a plain reading of article 9 of the U.C.C. and of section 544 of the bankruptcy code dictates that the trustee would have, in this case, superior rights to the liquor license over a "secret" creditor with an unrecorded interest. However, the impact of Rule 19 makes the trustee's rights in the licenses inferior to those persons holding interests through these "secret," unrecorded agreements.

It is obvious that Rule 19 has the clear effect of circumventing the perfection rules as set forth in the U.C.C. Life cannot be given to both Rule 19 and the priority provisions of the U.C.C. Thus, the Court is required to focus in on Rule 19 and determine whether it can be allowed to impinge upon article 9 of the U.C.C.

The M.L.C.C. was created by the Michigan Legislature pursuant to the Michigan Liquor Control Act of 1933. *See* Mich. Comp.Laws Ann. § 436.1 *et seq.* The M.L. C.C. is charged with the responsibility of regulating the traffic and sale of alcoholic beverages throughout the State of Michigan. The authority of the M.L.C.C. to regulate this traffic is plenary. *Zukaitis v. Fitzgerald,* 18 F.Supp. 1000 (1937); *Mutchall v. City of Kalamazoo,* 323 Mich. 215, 35 N.W.2d 245 (1948). However, the M.L. C.C.'s authority is limited to the regulation of alcohol. *Bundo v. Liquor Control Commission,* 92 Mich.App. 20, 283 N.W.2d 860 (1979). The bankruptcy court commented upon the scope of the M.L.C.C.'s authority in *The Matter of Ratcliff Enterprises,* 44 B.R. 778 (Bkrtcy.E.D.Mi.1984):

> If therefore, the aim of Rule 19 is to regulate the perfection of [a] security interest which is controlled by Michigan Statute, the regulation would be preempted.

That court went on to describe the harmful impact upon the economic process caused by allowing Rule 19 to encroach upon the

U.C.C. The Court noted that the most significant impact would be felt by

Businesses, small bars, taverns and enterprises in the State of Michigan which are often owned by sole proprietors whose very existence hinges upon the possession of a liquor license.

*Ratcliff* at 780.

That court further noted that without the ability to provide a security interest in a liquor license, the opportunity for these small businesses to obtain financing is "substantially impaired." *Id.* at 781. The *Ratcliff* court concluded that a security interest, properly perfected pursuant to the U.C.C. would have superiority over other interests in the liquor license. In so holding, the court specifically stated that it was not passing upon the validity of Rule 19. The Court believed that job was best left with the Michigan Supreme Court.[1] Nonetheless, the *Ratcliff* court stressed that it was placing greater emphasis upon the

Michigan Supreme Court's previous ruling in *Bundo v. Walled Lake, supra,* and upon the Michigan legislature's adoption of the U.C.C. than upon Rule 19. Accordingly, the *Ratcliff* court suppressed the impact of Rule 19 upon secured transactions involving liquor licenses. This Court agrees with the *Ratcliff* court's statement that,

regardless of the form, if the parties intend to create a security interest in a liquor license it comes within the ambit of article 9.

44 B.R. at 780.

■ Unfortunately, Rule 19 changes all this uniformity and clarity in the law. This Court holds that such a "change" was undertaken without proper legislative authority. The M.L.C.C. is only empowered to promulgate rules relating to the traffic and sale of alcoholic beverages. To the extent that Rule 19 suspends the law in Michigan

---

1. This Court agrees with the *Ratcliff* court, that the easiest disposition of this case would be to have the Michigan Supreme Court determine the viability of Rule 19. However, due to the seriousness of the question presented and the need for a speedy resolution of this and other similar cases, this court must take charge of the situation and render a decision.

One of the bankruptcy courts that has reviewed Rule 19 has suggested that in an appropriate case, this matter should be certified to the State Supreme Court pursuant to Michigan Court Rule 797. *In re Boufsko, Inc.,* 44 B.R. 98 (Bkrtcy., E.D.Mi.1984). Certification is a proper procedure to follow when a federal court is confronted with a question purely of state law, upon which the federal court finds it cannot make a "confident guess" as to what the state's high court would rule. *Clay v. Sun Insurance,* 363 U.S. 207, 212, 80 S.Ct. 1222, 1225–26, 4 L.Ed.2d 1170 (1959).

The Fifth Circuit has concisely declared the factors to be looked at by a court certifying a question to a state appellate court: (1) first and most importantly, the closeness of the question and the existence of sufficient sources of state law to allow a federal court to make a principled rather than a conjectural decision; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) delay and the possible inability to frame the issue so as to produce a helpful response from the state court. *Florida ex rel Shevin v. Exxon Corp.* 526 F.2d 266 (5th Cir.1976), *rehrg. denied,* 529 F.2d 523 (1976), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d

92 (1976); *also see American Fidelity Bank & Trust v. Heimann,* 683 F.2d 999, 1002 (6th Cir. 1982). The Fifth Circuit in *State of Florida ex rel Shevin,* and the Sixth Circuit in *American Fidelity Bank,* both declined to certify their cases for decision by the state supreme court. In both cases, one of the major considerations mitigating against certification was the inevitable delay inherent in the certification process. The Fifth Circuit listed several cases that it had certified to state supreme courts that had taken upwards of 26 months in the certification process. 526 F.2d at 275.

This Court's experience with our state's certification process is equally dismal. One case in this Court, *Lamb, et al., v. Ottawa County, et al.,* G80–796 CA, was certified on November 12, 1982, yet did not reach a final resolution until November 1, 1985. The Court is mindful that the parties in the present case should not have to wait upon the courts for three more years to settle this appeal. The Court notes that similar fact situations affect other parties throughout the State of Michigan. *See In re Moisson,* 51 B.R. 227 at footnote one (Bkrtcy.E.D.Mi.1985). It would be more prudent to make a decision today than wait for the Supreme Court of Michigan to (a) decide whether to accept the case for certification and (b) to ultimately decide the issue.

Finally, the Court notes that its decision would only reflect upon Rule 19's impact upon bankruptcy proceedings, a matter solely within federal jurisdiction. Consequently, principles of comity do not favor this Court's abdication of this issue to the state supreme court.

on perfection of security interests it must be held invalid.

The Michigan legislature may authorize administrative agencies, charged with the administration of a particular enactment, to adopt rules and regulations designed to effectuate the purposes of the enactment. *Coffman v. State Board of Examiners,* 331 Mich. 582, 590, 50 N.W.2d 322 (1951); *Sterling Secret Service v. State Police,* 20 Mich.App. 502, 513, 174 N.W.2d 298 (1969). The purpose of the Michigan Liquor Control Act is embodied in Mich.Comp.Laws Ann. § 436.1 which in pertinent part provides as follows:

> [I]t shall be lawful to manufacture for sale, sell, offer for sale, keep for sale, possess and/or transport any alcoholic liquor, as hereinafter defined, including alcoholic liquor used for medicinal, mechanical, chemical or scientific purposes and wine for sacramental purposes, subject to the terms, conditions, limitations and restrictions contained herein, and only as provided for in this act.

Pursuant to that same section, the M.L.C.C. is given the following duties and powers:

> [T]he commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the State of Michigan, including the manufacture, importation, possession, transportation and sale thereof.

■ The M.L.C.C. is charged with implementation of a specific statutory framework. As such it cannot deviate from its statutory responsibility. Any rules promulgated by the M.L.C.C. pursuant to its statutory authority must be within the subject matter covered by its enabling statute. *Grand Rapids School Employees Benefit Association v. Board of Education,* 95 Mich.App. 143, 290 N.W.2d 105, 106–107 (1980). It is further axiomatic that the M.L.C.C. cannot, under the guise of its rulemaking power, seek to abridge or enlarge its authority. *See Coffman,* 331 Mich. at 589, 50 N.W.2d 322; and *Sterling,* 20 Mich. at 510, 174 N.W.2d 298.

It is apparent to this Court that the M.L.C.C. overreached its statutory authority when it promulgated Rule 19. Arguments can be made that Rule 19 tangentially works to control the sale of alcohol within the State; however, the main impetus of the regulation is to supersede duly enacted legislative enactments regarding the priority of security interests. The M.L.C.C. is not empowered to implement the U.C.C. as enacted by the Michigan Legislature. That task is left solely to the duly elected members of the legislature, and the courts of the State of Michigan.

■ Accordingly, this Court holds that in a bankruptcy proceeding Rule 19 cannot, and will not, affect the priorities in a security interest in a liquor license. Rather, the bankruptcy court will adhere to the priority rules as set forth in the U.C.C. The Court is mindful that there is a difference of opinion amongst the bankruptcy courts in this state over this issue, with several courts taking measures designed to give implementation to both Rule 19 and the U.C.C.[2] However, this Court finds that the

---

**2.** Since 1981 there have been at least nine published bankruptcy court opinions on facts similar to the case at bar. The following bankruptcy court decisions held that a security interest can be obtained in a liquor license pursuant to the Uniform Commercial Code: *In re American Way Food Service Corp.,* 48 B.R. 79 (Bkrtcy.W.D. Mi.1985); *In the Matter of Ratcliff Enterprises Inc.,* 44 B.R. 778 (Bkrtcy.E.D.Mi.1984); *Donnelly (Bosker) v. Boufsko,* 44 B.R. 98 (Bkrtcy.E.D.Mi. 1984); *In re McCormick,* 26 B.R. 869 (Bkrtcy.E. D.Mi.1983); *In re Matto's,* 9 B.R. 89 (Bkrtcy.E.D. Mi.1981). The following bankruptcy courts have held that Rule 19 prohibits the taking of a security interest in a liquor license: *In re Mois-*

son, 51 B.R. 227 (Bkrtcy.E.D.Mi.1985); *In re Beefeaters Inc.,* 27 B.R. 848 (Bkrtcy.W.D.Mi. 1983); *Yiannatji v. Bernies, Inc.,* 44 B.R. 296 (Bkrtcy.E.D.Mi.1983); *In re Rudy's Inc.,* 23 B.R. 1 (Bkrtcy.E.D.Mi.1981).

There is also a published opinion from the federal district court in the Eastern District of Michigan which has upheld the validity of Rule 19, *Matter of Gullifor,* 47 B.R. 450 (E.D.Mi. 1985). In *Gullifor,* the court while upholding Rule 19, nonetheless held in favor of the holder of the reassignment of the liquor license over the trustee in bankruptcy. The theory used by the court was that the lienholder's interest in the reassignment of the liquor license was superior

dictates of the U.C.C., the necessity for simplicity and uniformity in bankruptcy proceedings, and sound business sense, warrant a finding against Rule 19.

Accordingly, the decision below is REVERSED, and this case is REMANDED to the bankruptcy court for further determinations not inconsistent with this opinion.

to the trustee's because of equitable considerations. The court noted that it was a matter of longstanding Michigan law to grant an equitable lien to a holder of a reassignment interest in such a license. Thus, in that case the court held that it did not matter that the lienholder failed to properly perfect his security interest. The court ruled that notwithstanding Rule 19, equity would still work to favor the lienholder.

By characterizing the reassignment of a liquor license on equitable terms, the *Gullifor* court was able to formulate a disposition of that case that lessened the impact of Rule 19 upon the U.C.C. However, this court notes that principles of equity as espoused by the Michigan courts will not always be readily available to be plugged into ever factual situation that Rule 19 may encounter. Consequently, this Court considers itself obliged to strike a hard "legal" conclusion regarding Rule 19, rather than rely upon the vagaries of equity.